## WM. ADCOX, Respondent, v. WESTERN UNION TELEGRAPH CO., Appellant.

### Kansas City Court of Appeals, June 2, 1913.

1. TELEGRAPH AND TELEPHONES: Penalty for Failure to Transmit: Message to Point Outside of Seate. Where the contract to send the message was made in this State, and the failure to transmit promptly also occurred in this State, the fact that the message was addressed to a point outside the State will not render the statute, Sec. 3330, R. S. Mo. 1909, inapplicable, because, under such circumstances, its enforcement does not involve giving the statute extraterritorial force, nor is it a regulation of or limitation on interstate commerce.

2. ———: ———: Application of Statute. The statute, section 3330, is a penal one and must be strictly construed. By its terms it applies only "upon payment or tender of the usual charges" and where the message was, at the request of the sender, sent "collect," there can be no recovery of the penalty. Before the penalty can be exacted there must be either an actual payment or an actual tender of the charges.

3. ———: ———: ———: Tender of Charges. A tender is an unconditional offer to pay. An announced willingness to pay on condition that the telegram cannot be accepted upon any other terms is not sufficient. The facts in this case reviewed and held to show no tender was made. There was no refusal on the agent's part to accept the money, merely a consent to send the telegram on the terms requested by the sender. If the latter wanted the company to send the telegram at its peril with reference to the penalty, he should have paid the charges or actually tendered them.

4. ———: Delay in Transmitting Message: Damages. Delay under such circumstances would render the company liable to damages but not to the penalty.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis,* Judge.

REVERSED.

*Fred S. Hudson* for appellant.

(1) This being a penalty statute, it must be strictly construed and plaintiff must bring himself clearly within its provisions without guessing or without inference or intendment before he can recover. Cowan v. Telegraph Co., 149 Mo. App. 407; Edrington v. Telegraph Co., 115 Mo. App. 98; Rixke v. Telegraph Co.; 96 Mo. App. 410; Grant v. Telegraph Co., 154 Mo. App. 279; Wagner v. Telegraph Co., 152 Mo. App. 369; Moore v. Telegraph Co., 164 Mo. App. 165. (2) Plaintiff's objection to the introduction of any testimony in this case should have been sustained because the petition shows on its face that it was an interstate message and petition further states that the tolls were not paid. Langley v. Telegraph Co., 15 S. E. 291; Western Union v. Ryals, 21 S. E. 573; Western Union v. Mossler, 95 Ind. 29; Wagner v. Telegraph Co., 152 Mo. App. 373. (3) Companies engaged in transmitting messages from one state to another are engaged in Inter-state Commerce and are under the control of the Act of Congress approved June 18, 1910. 24 Stat. L. 379; Railroad v. Reid, 222 U. S. 424, 56 L. Ed. 257.

*Frank W. Ashby* for respondent.

(1) It was negligence on the part of appellant's agent to hold the message in question three hours and forty-seven minutes, at its office in the city of Chillicothe, knowing that it was a rush message. Parker v. W. U. Tel., 87 Mo. App. 553. (2) Respondent agrees that the statute imposing a penalty without

evidence of damage is penal, and should be strictly construed, yet, this does not mean that the court is to interpret the statute so as to exclude cases coming reasonably within its scope. Moore v. Telegraph Co., 164 Mo. App. 165; Parker v. W. U. Tel., 87 Mo. App. 553. (3) And the burden of proof is upon the company to show that the wires were engaged as the reason for the delay in transmitting of dispatch. Sec. 3330, R. S. 1909. (4) And when plaintiff took the money out of his pocket and told defendant's agent that he was ready to pay for the dispatch, and the agent did not accept the offer, plaintiff was not required to count out the exact change. Stevenson v. Kilpatrick, 166 Mo. 263; Potter v. Schaffer, 209 Mo. 593.

TRIMBLE, J.—Plaintiff sues to recover of defendant the penalty imposed by section 3330, Revised Statutes of Missouri 1909, for failure to promptly transmit a telegram from its office in Chillicothe, Missouri, to the city of Indianapolis, Indiana.

A jury was waived and the case was tried by the court. There is no dispute over the fact that there was a failure to transmit promptly. The delay in sending said message occurred in the office at Chillicothe. This also is undisputed.

Plaintiff delivered the message to defendant's agent in the telegraph office at a little before eight o'clock in the morning, and explained to the agent that it was important to get it off at once so it would be certain to reach the addressee before noon else it would be of no avail to send it. The agent promised he would send the message at eight o'clock, that being the hour at which the work of the office properly began in the morning. The agent did not do so, however, for the reason that, after plaintiff left the office, a telegram came to plaintiff which the agent supposed related to the same transaction, and which the agent

thought would obviate the necessity of sending the
message plaintiff had delivered for sending. The two
messages had nothing to do with each other, however,
and the delay was caused by the agent taking upon
himself the responsibility of holding plaintiff's mes-
sage until a few minutes after twelve, and after the
time had expired for it to be of any avail. The agent
had no ground whatever for holding the message, as
he had been told to send it at once and had promised
to do so, and the message sent by plaintiff was ad-
dressed to a corporation, while the one received was
from an individual.

Defendant's main contention is that, as the mes-
sage was addressed to a point outside the State of Mis-
souri and was therefore, an interstate message, and
the defendant was engaged in interstate commerce;
and, as the statute cannot regulate such commerce not
having an extraterritorial force, the defendant is not
liable to the penalty prescribed.

It is true the statute does not have any extrater-
ritorial force, nor can it apply if its enforcement is,
in any degree, a regulation of interstate commerce.
It is also true that, in a number of cases, it has been
remarked that the statute in question can have no ap-
plication except in those cases where there is "a fail-
ure to promptly transmit from a place in this State
to the addressee at another place also in this State."
But an examination of those cases will disclose that
such remarks were a little broader than the facts there-
in warranted. In all of them the contract calling for
the exercise of defendant's common law duty, and the
negligence or violation of that duty, or at least a con-
stituent element of that violation, occurred outside of
the State. Hence, as the statute could have no extra-
territorial force, it could not be made applicable or be
enforced in such instances. In the case of Rixke v.
Western Union, 96 Mo. App. 406, the violation of duty
charged was a failure *to deliver* the telegram in Leav-

enworth, Kansas. The statute, as it stood at that time, was held not to include failure to deliver, but the court held that, even if it did, there could be no recovery, since the negligent act occurred outside the State. And it was in speaking of this that language was used to the effect that the statute applied only in cases where the message was between points within the State, and not to a point outside.

In Wagner v. Western Union, 152 Mo. App. 369, the telegram was sent from a point in the State of Kansas to a point in Missouri. In other words, the contract out of which defendant's common law duty arose, and on which the claim for penalty in that case was based, was executed outside of the State. And, as the statute is penalty, it must be strictly construed, and, having no extraterritorial force, it could not apply. In Connell v. Western Union, 108 Mo. 459, the violation of duty charged was the failure to *deliver* the telegram at Leavenworth in the State of Kansas. The Supreme Court, on page 463, says the duty charged to have been violated by defendant was "not that it failed to *receive and transmit* the message" at Sedalia, but that it failed to deliver it at Leavenworth in Kansas; and that the duty imposed by the statute upon defendant was to *receive and transmit* the message *at Sedalia*. It would seem from this that, had the delay or violation of duty been shown to have occurred at Sedalia, a point within the State, and where the contract to receive and transmit was made, the Supreme Court would not have held the statute inapplicable.

So that, so far as we have been able to discover, there is no case holding that, where the contract and the delay both arose in the State of the statute wherein the penalty was sought to be enforced, the statute is not applicable because the telegram happened to be addressed to a point outside the State. On the contrary, this court, in an opinion by Johnson, J., in the

case of Hewitt v. Western Union,——Mo. App.——, decided May 19, 1913, and not yet reported, held that where the contract was made in this State, and the violation of the duty to promptly send, also occurred in this State, the statute applied.   Under, such circumstances there is no extraterritorial operation of the statute, nor is there any limitation or regulation placed on interstate commerce by the application and enforcement of the statute.   [Telegraph Co. v. James, 162 U. S. 650; Telegraph Co. v. Crovo, 220 U. S. 364.]   The case last cited grew out of a suit bought by Crovo in Virginia to recover a penalty under a statute of that State for failure to promptly transmit a telegram from its office in Richmond, in that State, to Brooklyn, New York.   The point was made that the statute did not apply, but the trial court held that, as the jury found the delay occurred in Virginia and not in New York, the penalty was recoverable; and the Supreme Court of Appeals of Virginia, in denying a writ of error, said that "the judgment was plainly* right."   A writ of error was sued out in the United States Supreme Court (being the case last cited as above stated); and in that case it was held that the statute was "neither a regulation of nor a hindrance to interstate commerce, but is in aid of that commerce."

Objection is made to the action of the court in allowing plaintiff to amend his petition so as to expressly state that the charges for the telegram were tendered at the time the message was delivered for transmission.   This, however, was permissible under our statute.   [Sec. 1848, R. S. Mo. 1909; Lowenstein v. Railway, 134 Mo. App. 24, l. c. 34.]   The fact that this was an action to recover on a statute penal in its nature does not change the law in relation to pleadings in the case.

But the defendant contends that the charges were neither paid nor tendered, and, therefore, there can be no recovery.   It must be borne in mind that the

statute on which the case is bottomed is penal and must be strictly construed. Plaintiff, in order to recover, must bring himself clearly within its terms and provisions, and show that his case comes clearly within its manifest spirit and intent. [Cowan v. Telegraph Co., 149 Mo. App. 407; Edrington v. Telegraph Co., 115 Mo. App. 98; Grant v. Western Union, 154 Mo. App. 279.] Now our statutes says: "It shall be the duty of every telegraph . . . company . . . in this State . . . on payment or tender of their usual charges .. . . to transmit and deliver . . . said dispatch . . . promptly under a penalty of three hundred dollars for every neglect or refusal so to transmit and deliver, etc." By the express provisions of the statute, the liability to the penalty is made to rest on the failure to promptly transmit *on payment or tender of the usual* charges. In Western Union v. Ryals, 21 S. E. 573, it is held that an actual payment or tender of the charges is a prerequisite to a recovery of the penalty provided by the statute; that neither the agreement between the sender and the agent that the charges shall be held as a debt to be subsequently paid by the sender, nor an agreement that they shall be paid by him and a third person jointly, can take the place of payment or actual tender with reference to the penal element of the statute, and that the fact that the message was sent marked "prepaid" made no difference. The court, on page 574 says: "If he (the sender) wishes the company to transact his business at its peril with reference to the penalty, he must either pay in cash or make the tender required by the statute." [See also Langley v. Western Union, 15 S. E. 291; Western Union v. Mossler, 95 Ind. 29.]

That the charges were not paid is conceded. The orginal pentition alleged that "the said agent agreed to collect the usual and regular charges for transmitting said dispatch from the addressee therein." After

the plaintiff had closed his testimony, and while the defendant was offering its evidence, plaintiff, by leave, amended by interlining, just in front of the above quoted allegation, the words "he (plaintiff) tendered to the agent and operator of defendant in charge of its office aforesaid its usual charges for transmitting said dispatch as established by the rules of defendant, and he refused to receive the same." As the non-payment of the charges is conceded, does the proof show that the charges were tendered?

A tender is defined by Black's Law Dictionary to be: "An offer of money; the act by which one produces and offers to a person holding a claim or demand against him the amount of money which he considers and admits to be due, in satisfaction of such claim or demand, *without any stipulation or condition*." To constitute a tender there must be an *unconditional offer to pay*. [Henderson v. Cass County, 107 Mo. 50; Ruppel v. Mo. Building Assn., 158 Mo. 613 l. c. 622.] A tender to be good must be unaccompanied by any condition to which the creditor has a right to object. [28 Am. & Eng. Ency. of Law (2 Ed.), p. 31.] And before a tender can be said to be waived, the tenderee must have refused to accept it or must have placed himself in such position as would make a tender an unnecessary act. [38 Cyc. 136.] A mere assertion of readiness or willingness to pay is not sufficient. [38 Cyc. 142.]

An examination of all the testimony discloses that there was no real tender of the money in this case, nor was there either an express or implied refusal on the part of the agent to take it. On the contrary, it shows that, at *plaintiff's request*, the message was accepted to be sent "collect" that is, without payment of charges by the sender but which were to be obtained by the company from the addressee, and, in case of failure to collect from the addressee, then the sender was to pay. In other words, the message was

not a prepaid but a credit transaction. Plaintiff testified on this point as follows:

"Q. Go ahead and tell what you said there about the payment of the message, what the agreement was. A. I was quite anxious to get it off but had been in the habit, which is generally customary with all company's messages and expenses such as that which they always make up in their sworn statement, and I asked him to count it up and he told me what it come to and he said, 'Do you want to send it "collect" or pay it here?' I said, 'I would rather you would send it "collect," but I can pay you here if you want it;' and he said, 'All right, I will send it "collect,"' and I said, 'If you fail to collect, I will pay it anyway,' and I took the money out of my pocket and said, 'I can pay it here if you want me to.'"

A little further on in again describing what took place between him and the agent plaintiff said: "He first counted it up and he said how much it is and he said eighty cents, as well as I remember. He said, 'Do you want it sent "collect" or pay it now?' I said, 'I have been sending them that way according to instructions, but if you can't send it that way, I will pay you now,' and pulled out the money.

"Q. If he couldn't send it how? A. Collect.

"Q. Did he say it would go 'collect?' A. Yes."

The agent testified that:

"A. Mr. Adcox came in and wrote out the telegram going to the Prudential Casualty Company at Indianapolis, Indiana, and I asked him whether to send it paid or collect, and he says 'send it collect.' He asked me when I would get it off and I told him at eight o'clock, as soon as I would open up.

"Q. He got in there a little before eight? A. Yes, sir.

"Q. You told him you would send it when you opened up? A. Yes, sir.

"Q.  Did Adcox pay for it?  A.  No, sir.

"Q.  Did he offer to pay for it?  A.  No, sir."

He further testified that no money was offered him at all; that he saw no money in plaintiff's hand; and that he sent the message, as requested, "collect" that is, the charges to be paid for by the addressee. This was all the testimony bearing on the question of tender.  In our opinion it does not show any tender whatever, but does show that the message was sent on a credit basis and sent thus at plaintiff's request.  Of course in passing on this point we must accept everything said by the plaintiff as literally true and what he says is to be most liberally construed in his favor. But, after doing this, the most that can be said is that he handed the message to the agent and requested him to send it "collect" and the agent, without demurring or objecting in any way, acceded to his request and sent it on those terms.  The fact that plaintiff may have pulled a dollar out of his pocket and said "I will pay you if you can't send it that way" does not change the situation.  He still wanted the message sent on a credit basis and it was sent that way.  As said by the court in Western Union v. Ryals, supra, if he "wanted the company to transact his business at its peril with reference to the penalty, he must either pay in cash or make the tender required by the statute."  Payment in cash was not waived, nor did the agent refuse to accept the case.  He merely granted plaintiff's request to send the message on a credit basis and agreed to look to the addressee for payment afterwards, or in case of its refusal to pay, then to plaintiff for it.  The transaction was nothing more than a sending of the message on credit, that is, on a basis to which the penalty statute does not apply.  The fact that plaintiff took a dollar from his pocket and said "I will pay you if you can't send it that way" did not change its nature or make such announcement a tender.  One

could go into a store and shake a roll of bills as big as one's arm under the proprietor's nose and say: "I want to get this suit of clothes on credit but, if I can't get it that way, I am willing to pay you," and yet this would constitute no tender of the money if the store-keeper granted his request and told him to take the goods along, and the purchaser was charged therewith.

Of course we do not say that defendant would not be liable for *damages* for failure to transmit promptly under such circumstances, but that is not this case. This is a suit for a statutory *penalty,* and the plaintiff must bring himself squarely within the terms of the statute. The cases cited by respondent as holding the company liable even if there was no tender but merely an agreement to collect the charges later, are not cases under the statute to recover a penalty, but suits to recover damages for negligence. [Cogdell v. Western Union, 135 N. C. 341, 47 S. E. 490; Western Union v. Cunningham, 99 Ala. 314, 14 So. 579; Western Union v. Henley, 157 Ind. 90.] The cases of Western Union v. Yopst, 20 N. E. 222, was to recover a penalty. But, in that case, the agent declined to receive compensation and requested that he be allowed to collect the expense from the addressee. And the court held that, as failure to pay for the message at the time of sending it, was the result of the agent's act, the company could not escape liability on the ground that compensation was not paid at the time the message was delivered to the agent by the sender. That is an entirely different situation from the one presented here. The request to send the message "collect" came from the sender in the case before us, and there was no refusal on the part of the agent to accept the money. He merely acceded to plaintiff's request and accepted the telegram on the same terms plaintiff had been accustomed for more than a year to send them, namely, on a credit basis, that if the addressee refused to pay,

he would do so. Under such circumstances we do not think the statute applies, and, it being penal, we cannot stretch it to make it fit the case. The judgment is, therefore, reversed. All concur.