F. W. BROCKMAN COMMISSION COMPANY, Respondent, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

St. Louis Court of Appeals, February 3, 1914.

1. STATUTES: Penal Statutes: Construction. Although a penal statute should be strictly construed, its life and spirit should not be destroyed thereby.

2. ———: ———: Enforcement. One who seeks to recover a penalty imposed by a statute must bring his case clearly within the terms of the statute.

3. TELEGRAPHS AND TELEPHONES: Failure to Deliver Message: Penalty: Statute. Section 3330, R. S. 1909, providing for the infliction of a penalty on telegraph companies for failure to promptly transmit and deliver telegrams, is a penal statute, and, as such, must be strictly construed; and in order for one to recover a penalty under it, he must bring his case clearly within its terms and provisions.

4. ———: ———: ———: ———. Section 3330, R. S. 1909, has naught to do with the liability of telegraph companies for damages suffered by reason of delay in the transmission of telegrams, but penalizes them for failure to transmit and deliver telegrams, or to use due diligence to do so promptly, regardless of whether damages were or were not suffered by reason thereof.

5. ———: ———: ———: ———: **Necessity of Prepayment of Charges.** Under section 3330, R. S. 1909, providing for the infliction of a penalty on telegraph companies for failure to promptly transmit and deliver telegrams, the payment or tender of the usual charges before the telegram is accepted for transmission is a condition precedent to a recovery of the penalty; and a sender of a telegram, who, in accordance with the custom obtaining between him and the telegraph company, signed a due bill for the charges, which was to be subsequently paid upon demand, was not entitled to recover the penalty, since the transaction was a credit one, and did not amount to a prepayment of the charges.

Appeal from St. Francois Circuit Court.—*Hon. Peter H. Huck*, Judge.

REVERSED.

*Ferriss, Zumbalen & Ferriss* for appellant.

(1) The charges for sending the message were not paid by the plaintiff at the time of tendering the message for transmission and hence plaintiff is not entitled to the penalty. Sec. 3330, R. S. 1909; 27 Am. & Eng. Ency., 1086; 37 Cyc., 1704; Jones on Tel. & Tel. Cos., sec. 643; Joyce on Electric Law, sec. 848; Adcox v. Western Union Tel. Co., 171 Mo. App. 331; Eddington v. Western Union Tel. Co., 115 Mo. App. 97; Wood v. Western Union Tel. Co., 59 Mo. App. 241; Western Union Tel. Co. v. Ryals, 94 Ga. 336; Langley v. Western Union Tel. Co., 88 Ga. 777; Western Union Tel. Co. v. Mossler, 95 Ind. 29. (2) The Telegraph Company cannot be penalized for negligence occurring on the telephone line between Delassus and Farmington. 27 Am. & Eng. Ency., 1056-7; 37 Cyc., 1692; Jones on Tel. & Tel. Cos., secs. 446-7; Joyce on Electric Law, sec. 789 et seq.; Gray on Communication by Telegraph, sec. 33 and sec. 58 (note, p. 104); Western Union Tel. Co. v. Stratemeier, 6 Ind. App. 125; Tel. Co. v. Mumford, 3 Pickle, 190 (Tenn.), 2 L. R. A. 601 (note); Western Union Tel. Co. v. Carew, 15 Mich. 525; Leonard v. Tel. Co., 41 N. Y. 544; Baldwin v. U. S. Tel.

Co., 45 N. Y. 744 Western Union Tel. Co. v. Lovely, 52 S. W. 563 (Tex.); Western Union Tel. Co. v. Sorsby, 29 Tex. Civ. App. 345; Baxter v. Dominion Tel. Co., 37 U. C. R. 470 (Can.). (3) Even if the telephone line be regarded as part of the defendant's system and the defendant be held responsible for its operation, there was no proof of such negligence or bad faith or discrimination in view of all the circumstances as would support a judgment for the penalty. Moore v. Western Union Tel. Co., 164 Mo. App. 165; Jones v. Tel. Co., 75 S. C. 208. (4) The judgment is wrong in form in that it awards the entire $300 penalty to plaintiff instead of awarding one-third of it to the school fund. Parker v. Tel. Co., 87 Mo. App. 553; Wilkinson v. Tel. Co., 163 Mo. App. 71. (5) The court excluded competent and relevant evidence offered by defendant. (6) Instruction No. 1 given for the plaintiff is erroneous.

*Julian Paul Cayce* and *Douglas W. Robert* for respondent.

(1) The payment of the usual charges was made in accordance with the rules and regulations established by the telegraph company. Abstract, pp. 17, 18, 19; Sec. 3330, R. S. Mo. 1909; Elliott v. Tel. Co., 157 S. W. 670; Parker v. Tel. Co., 87 Mo. App. 558; Gifford v. Tel. Co., 106 N. Y. S. 53. (2) Chalk and Elayer were the company's agents. There is no question of a connecting carrier here, as the Farmington Telephone Co. was not informed of the message or requested to deliver it. The negligence of Chalk and Elayer was the appellant's negligence. McCloud v. Tel. Co., 157 S. W. 601; Neet v. Tel. Co., 157 S. W. 113; Wilkinson v. Tel. Co., 163 Mo. App. 71; Western Union v. Sisson, 160 S. W. 168. (3) If Elayer was not the agent of the telegraph company, then the appellant disclosed the contents of the dispatch in vio-

lation of law, and hence cannot plead wrong-doing as a defense. Sec. 3334, R. S. Mo. 1909. (4) The evidence excluded was obtained from other witnesses, hence there was no harm done appellant. Besides, it did not offer to show what it would prove by the witness. Bowman v. Mining Co., 168 Mo. App. 707. (5) Instruction No. 1 given is correct. It followed the statute. Appellant singles out one clause of the instruction for complaint. The instruction will be considered as a whole. Turley v. Railroad, 166 Mo. App. 659.

ALLEN, J.—This is an action to recover the penalty imposed by section 3330, Revised Statutes 1909, for the alleged failure of the defendant telegraph company to promptly transmit and deliver a telegram sent from the city of St. Louis to Farmington, Missouri.

Plaintiff, in its petition, averred the delivery of a certain telegram to defendant at its St. Louis office, to be transmitted to the addressee at Farmington, the tender and payment to defendant of the usual charges for transmitting and delivering such a message, as established by the rules and regulations of defendant, and the acceptance of the message by defendant for transmission and delivery; that the defendant "did not transmit and deliver said message promptly to the addressee, and did not use due diligence to place said dispatch in the hands of the addressee by the most direct means available, promptly and with impartiality and good faith," but that defendant "neglected and failed and refused" so to do. And plaintiff prayed judgment for the sum of $300, the statutory penalty, two-thirds thereof to be retained by plaintiff and one-third to be paid into the county school fund of St. Francois county, Missouri. The answer was a general denial.

The cause was tried before the court and a jury, resulting in a judgment for plaintiff for the said pen-

alty of $300, and the case is here upon defendant's appeal.

On December 21, 1911, plaintiff corporation, engaged in the commission business in the city of St. Louis, delivered to the defendant the following telegram to be transmitted by it to Morris Bros., at Farmington, Missouri, viz.: "Live turkey market declined one cent quoted fourteen selling fourteen half." Plaintiff's president testified that at about 11:30 a. m., on said December 21, 1911, he wrote the message in question, at plaintiff's place of business, upon one of defendant's telegraph blanks, and put in a call for a "Western Union" messenger by means of a "call box" in plaintiff's office; that a few minutes thereafter one of defendant's messengers appeared and took the message, the plaintiff signing a "due bill" for the charges to be paid upon this and other messages sent by it at the time.

It appears that it was customary for plaintiff, in delivering telegraph messages to defendant for transmission by it, to sign due bills for the charges therefor, such due bills being printed forms, upon slips of paper, prepared by defendant company and supplied to plaintiff and other of its patrons for this purpose; that upon sending a message or messages, plaintiff would sign such a paper indicating the message or messages delivered to defendant, and that later the same would be returned to plaintiff with the charges filled in, and such charges collected by defendant. Plaintiff's president testified that such due bills were paid on demand, sometimes the day following that upon which the telegram was sent, and sometimes several days later; that, upon the occasion in question, the due bill containing the charges for this telegram, which were forty-three cents, was presented upon the day following that upon which the telegram was sent, and that the amount thereof was then paid.

It appears that defendant endeavored to send the telegram in question to Farmington by way of Delassus, Missouri, which is but a few miles from Farmington; and that it was received by the operator at Delassus at about 12:35 p. m. of that day. It may be inferred that defendant company had no telegraph line leading directly to Farmington, though it seems that it maintained an office at that place. However, defendant's operator at Delassus endeavored to transmit the message to Farmington by telephone, but failed to do so prior to about two o'clock of that afternoon, at which time it was given to an agent of defendant who had arrived from Farmington and who was shortly to return to the latter place. It appears that the message was delivered to the addressee at about 4:15 that afternoon.

There are several assignments of error before us, but it will be necessary to notice only that which pertains to the ruling of the trial court on the demurrer to the evidence interposed below by defendant.

The pertinent provisions of the statute upon which the action is predicated, viz., section 3330, Revised Statutes 1909, are as follows:

. "It shall be the duty of every telegraph or telephone company, . . . . in this State . . . *on payment or tender of their usual charges for transmitting and delivering dispatches as established by the rules and regulations of such telephone or telegraph lines,* to transmit and deliver the same to designated address and to use due diligence to place said dispatch in the hands of the addressee, by the most direct means available, without material alterations, promptly, and with impartiality and good faith under a penalty of three hundred dollars for every neglect or refusal so to transmit and deliver," etc. (Italics ours.)

The statute, is, of course, penal in its nature. It is to be strictly construed; and plaintiff, in order to recover, must bring itself clearly within the terms and

provisions thereof. The statute has naught to do with the liability of a telegraph company for damages suffered by reason of delay in the transmission of a telegram, but penalizes the company for failure to transmit and deliver a message, or to use due diligence to do so promptly, etc., regardless of the question of whether damages were or were not suffered by reason thereof. Obviously, one who seeks to invoke the statute and recover such penalty must bring his case clearly within its terms. [See Adcox v. Telegraph Co., 171 Mo. App. 331, 157 S. W. 989; McCloud v. Telegraph Co., 170 Mo. App. 624, 157 S. W. 101; Grant v. Telegraph Co., 154 Mo. App. 279, 133 S. W. 673; Bradshaw v. Tel. Co., 150 Mo. App. 711, 131 S. W. 912; Cowan v. Telegraph Co., 149 Mo. App. 407, 129 S. W. 1066; Eddington v. Telegraph Co., 115 Mo. App. 93, 91 S. W. 438; Pollard v. Telephone Co., 114 Mo. App. 533, 90 S. W. 121; Wood v. Telegraph Co., 59 Mo. App. 236; Connell v. Tel. Co., 108 Mo. 459, 18 S W. 883; Elliott v. Tel. Co., 175 Mo. App. 213, 157 S. W. 670.]

While this does not mean that the life and spirit of the statute are to be construed out of it by a strict construction of its terms (see Elliott v. Telegraph Co., supra, l. c. 672), it does mean that "no case shall be held to fall within it which does not fall both within the reasonable meaning of its terms, and within the spirit and scope of the enactment." [See Connell v. Telegraph Co., supra, l. c. 463, and authorities cited.]

By the express provisions of the statute, a telegraph company becomes liable for the penalty imposed, for the failure there mentioned with respect to the transmission and delivery of a message, only "on payment or tender of the usual charges" for such service. And our courts have uniformly held that actual prepayment, or tender in advance, of such charges is a prerequisite to the recovery of the penalty provided by the statute. [See Adcox v. Telegraph Com-

pany, supra; Eddington v. Telegraph Co., supra; Wood
v. Telephone Co., supra.] And such is the general
rule of decision with respect to the recovery of a pen-
alty under such a statute. [See W. U. Tel. Co. v.
Moosler, 95 Ind. 29; Langley v. Telephone Co., 88 Ga.
777; W. U. Tel. Co. v. Ryals, 94 Ga. 336; 37 Cyc. 1704;
27 Am. & Eng. Ency. Law, 1086.]

It cannot be doubted that the condition upon which
the telegraph company is required, by the statute, to
promptly transmit and deliver, etc., is the payment
or tender of the usual charges; and unless this is done
the sender cannot recover the statutory penalty. As
is said in W. U. Tel. Co. v. Ryals, supra, if one wishes
a telegraph company "to transact his business at its
peril, with reference to the penalty, he must either pay
in cash or make the tender required by the statute."

And in Adcox v. Telephone Company, supra,
where the message was sent "collect," the plaintiff
guaranteeing the charges, the court said: "The trans-
action was nothing more than a sending of the message
on credit; that is, on a basis to which the penalty stat-
ute does not apply. . . . Of course we do not say
the defendant would not be liable for damages for fail-
ure to transmit promptly under such circumstances,
but that is not this case. This is a suit for the stat-
utory penalty and the plaintiff must bring himself
squarely within the terms of the statute."

In the instant case it appears that the telegram
was stamped "paid;" but this is wholly without in-
fluence here, for the facts concerning the transaction
affirmatively appear, showing that the charges were
not actually prepaid in cash. The message was doubt-
less so marked merely in order that the charges there-
for might not be collected from the addressee; but the
matter is here inconsequential.

But learned counsel for respondent contend that
the transaction attending the sending of this telegram
was such as to constitute payment or tender at the

time, within the meaning of the statute. The theory of counsel in this regard is that the signing of a due bill at the time of sending the telegram, in accordance with a custom established by the defendant for the transaction of its business with plaintiff and other like patrons, and which it is said was for defendant's convenience, constituted payment or tender of the company's usual charges, in accordance with the latter's rules and regulations. And in this connection it is urged that the words, "as established by the rules and regulations of such telephone or telegraph lines," in the above statute, are to be construed as referring to and limiting the words "payment or tender," and not as referring merely to fixing the amount of the charges. In other words it is contended that this portion of the statute means that such *payment of tender* is to be made according to the company's established rules and regulations, if any. And it is argued that it here appears that the defendant company had established certain rules and regulations respecting the payment of its usual charges; that it had established and provided a method of paying such charges by due bills, and that the use of such a due bill, under the circumstances, operated as a payment or tender of the charges; and that therefore the requirements of the statute were fully complied with.

In support of this contention, we are referred to Gifford v. Telephone Co., 106 N. Y. Suppl. 53, a case based upon a New York statute making it the duty of a telegraph or telephone company to receive dispatches, etc., and "on payment of the usual charges by individuals for transmitting dispatches as established by the rules and regulations of such corporations, transmit the same," etc. There the plaintiff, undertaking to telephone at a pay station, deposited the proper charge in the box intended for its reception while the telephone receiver was upon the "hook;" but it appears that he should have done so with the receiver

off the hook, as the company's rules provided, so that the operator could ascertain the fact that such coins had been so deposited. The operator refused to make the desired connection under the circumstances. Plaintiff refused to make a further deposit in the box, and brought his action to recover the statutory penalty. It was held that he was not entitled to recover; the gist of the decision being that he had not paid the usual charges in the manner provided by the rules of the company.

That case may indeed be said to sustain respondent's theory with respect to the construction of the statute with reference to the words "as established by the rules and regulations of such telephone or telegraph lines." But the case does not here help respondent. And it is unnecessary for us to decide whether the statute should or should not receive the construction contended for; leaving that question to be passed upon in a case where its determination is necessary to the decision therein. In the instant case, respondent made no actual payment or tender in money of the charges at the time of delivering the telegram to defendant. If such actual tender or payment be made in any manner, and any question then arises as to whether the manner of making the same is in accordance with the company's prescribed rules or regulations, the matter becomes an altogether different one. In the Gifford case, supra, the plaintiff actually made payment of the usual charges, but he did not make such payment in accordance with the company's rules. As our statute requires a cash payment in advance of the charges, in order that one may hold a telegraph or telephone company for the penalty of the statute, as is said in the cases to which we have referred above, manifestly, in order for a plaintiff to recover, he must first show that he has actually made such prepayment or tender. And, according to the Gifford case, supra, he may perchance even then be denied a recovery upon

the ground that such payment or tender was not made according to the company's rules or regulations—a matter which we do not here decide.

The contention that the execution of a due bill at the time of sending a telegram is such payment of the charges therefor as will satisfy the statute cannot be sustained. If, for the sake of argument, we take respondent's view of the statute, and grant that the custom here said to have been adopted by defendant with respect to the use of due bills can be said to have been a matter established by defendant's "rules and regulations," nevertheless it was not a method prescribed whereby immediate *payment or tender* was made of the company's charges. On the contrary it was essentially a method provided for sending telegrams upon the credit of the sender. It cannot be doubted that such is essentially a credit transaction. And in this respect its character is in no wise altered by the fact that the charges shown by such due bills were payable on demand, and were collected within a day, or a few days thereafter, for *the element of credit necessarily inheres in the transaction.* The sender utilizes the facilities of the telegraph company for the transmission of its message or messages, leaving the charges to be thereafter settled. That such charges are not in fact *paid* merely by signing a due bill is obvious. On the contrary, such due bill is nothing more or less than an acknowledgment of indebtedness on the part of the sender for the proper charges.

If plaintiff's case is to be held as falling within the statute, then clearly by the same reasoning, the statute may be extended to all cases, in general, where a company of this character transacts the business of its patrons upon a credit basis. There is no sound distinction between the case before us and any other in which for any reason a message is sent upon credit. And to sustain respondent's contention would be, in effect, to extend the statute, not only beyond the rea-

sonable meaning of its terms, but beyond the spirit and scope of the enactment.

But it is argued that if the use of such due bills, in accordance with a well-established custom, is not a compliance with the statute, then ''scarcely any business house is protected by the statute, and only the wayfarer, who produces the actual money for an occasional message, has its protection.'' But it cannot be said that it is any hardship upon the sender of a telegram that he must be held to waive the penalty of the statute if he does not at the time actually prepay or tender the charges. It merely means that if he is permitted to transact business with the telegraph company upon a credit basis, and elects so to do, he cannot compel the latter to handle his business at its peril, and become liable under a harsh and penal statute; but he is left to his action for damages in case loss is entailed through the company's default. If plaintiff here suffered actual damage by reason of a wrongful delay in transmitting and delivering the telegram in question, plaintiff was not without remedy. But, under the circumstances, plaintiff may not invoke the penal statute upon which this action is predicated.

It follows that appellant's demurrer to the evidence should have been sustained; and the judgment must accordingly be reversed. It is so ordered. *Reynolds, P. J.*, and *Nortoni, J.*, concur.