J. W. MORAN, Appellant, v. WESTERN UNION
TELEGRAPH COMPANY, Respondent.

**St. Louis Court of Appeals. Submitted on Briefs December 9, 1914.
Opinion Filed January 5, 1915.**

**TELEGRAPHS AND TELEPHONES: Failure to Deliver Message:
Penalty: Necessity of Prepayment.** Payment or tender of the
usual charges for transmitting and delivering a telegram, at
the time it is accepted, is a condition precedent to the right
to recover the penalty provided for by Sec. 3330, R. S. 1909,
for failure of the telegraph company to promptly transmit and
deliver the telegram.

Appeal from Montgomery Circuit Court.—*Hon. James
D. Barnett,* Judge.

AFFIRMED.

*E. Rosenberger & Son* for appellant.

(1) It is the duty of a telegraph company which
receives a message for transmission directed to an
individual at one of its own stations to deliver that
message to the person to whom it is addressed with
reasonable diligence, and in good faith. That is a part
of its contract implied by taking the message and re-
ceiving payment therefor. Hughlett v. Western Union
Telegraph Co., 172 Mo. App. 272. (2) Section 3330,
R. S. 1909, providing for the infliction of a penalty on
telegraph companies for failure to promptly deliver a
telegram, etc., being a penal statute, is to be strictly
construed, and its operation is not to be extended be-
yond its necessary meaning, but this does not mean
that its life and spirit are to be construed out of it
by a strict adherence to its words. Elliott v. Western
Union Telegraph Co., 175 Mo. App. 213. (3) The
operator of a telegraph company is the agent of the
company in receiving over a telephone a message to

be transmitted by the company in the absence of any showing that the company forbade such practice, or that if it was forbidden the sender had notice of such regulation. Carland v. Western Union Telegraph Co., 76 N. W. 762. (4) Plaintiff is entitled to recover in this case. It clearly falls within the statute; the message was a prepaid message within the meaning of the law. Western Union Telegraph Company v. Henley, 60 N. E. 682.

*Geo. H. Fearons* and *G. Pitman Smith* for respondent.

(1) The message was not a prepaid message and was not paid for to Mr. Dickenhorst, manager, by Mr. Guinn, until some time later, and was not paid by Mr. Dickenhorst to the company until the first of the following month; and not being a prepaid message does not come within the provisions of section 3330, R. S. 1909, imposing a penalty for failure to promptly deliver a telegraphic message. Brockman Commission Co. v. W. U. Tel. Co., 163 S. W. 920; Naysep v. W. U. Tel. Co., 168 S. W. 259; Adcox v. Telegraph Co., 171 Mo. App. 331; Eddington v. Tel. Co., 115 Mo. App. 93; Wood v. Tel. Co., 59 Mo. App. 236; W. U. Tel. Co. v. Moosler, 95 Ind. 29; Langley v. Tel. Co., 88 Ga. 777; W. U. Tel. Co. v. Ryalls, 94 Ga. 336. (2) This statute is penal in its character and must be strictly construed; and plaintiff in order to recover must bring himself clearly within the terms and provisions thereof. Obviously, one who seeks to invoke the statute and recover such penalty must bring his case clearly within its terms. Brockman Commission Co. v. W. U. Tel. Co., 163 S. W. 920; Naysep v. W. U. Tel. Co., 168 S. W. 259; Adcox v. Tel. Co., 171 Mo. App. 331; McCloud v. Tel. Co., 170 Mo. App. 624; Grant v. Tel. Co., 154 Mo. App. 279; Bradshaw v. Tel. Co., 150 Mo. App. 711; Cowan v. Tel. Co., 149 Mo. App. 407; Eddington

v. Tel. Co., 115 Mo. App. 93; Pollard v. Tel. Co., 114 Mo. App. 533.

REYNOLDS, P. J.—One J. W. Moran, plaintiff below, appellant here, living in the country, in Lincoln county, near Olney, sent his son to one Guinn, a merchant at Olney, who had a Bell telephone connection with Troy, in Lincoln county. The son desired to telephone a message to Montgomery City to one James Elder, but Guinn ascertained that the telephone line was not operating through to Montgomery and suggested that the message be telephoned to Troy and wired from there to Montgomery City. This was done and Guinn telephoned to the operator of the Western Union Telegraph Company at Troy, this message, directed to James Elder, Montgomery, Missouri: "Mother dead; funeral three o'clock. Telephone Dr. Mudd." (Signed.) "William Moran." At the same time Guinn, who had no official position with the Telegraph Company, told the telegraph operator at Troy, one Dickenhorst, that he wanted the message to go as a prepaid message. The telegraph operator at Troy accordingly transmitted it that day, that is to say, September 19, 1911, by the line of the Western Union Telegraph Company, to Montgomery City, and it appears that it was received at the telegraph office there at 8:42 a. m., on the 19th of September.

While this message was marked "Paid," there is no testimony that in point of fact anything was paid on it at the time the telegraph operator at Troy sent it forward. To the contrary, the telegraph operator testified that knowing Guinn, he trusted him to pay him for it, and this operator merely entered up a memorandum in his personal book of the fact that Guinn owed him twenty cents for this message, that being the usual and proper charge of the Telegraph Company for transmitting it from Troy to Montgomery City. It appears that the message was not delivered

to Elder on the 19th and he did not hear of it until the 20th; that it was on that day telephoned to his residence from the Montgomery office, but it did not actually come into his hands, or into the hands of any member of his family until the following day, that is the 21st, too late for Elder or his family to attend the funeral of the lady referred to in the telegram, who it appears was a relative. It is asserted by learned counsel for appellant in his abstract that Moran's son paid Guinn the twenty-five cents as well as telephone charges at the time of the delivery of the message to Guinn at Olney, but a careful examination of the testimony of Guinn, who it is claimed made this statement, and which testimony is set out in full by respondent, fails to sustain this assertion.

At the conclusion of the trial, which was before the court, a jury having been waived, the plaintiff asked various declarations of law, all on the theory that there had been a prepayment of the usual charges and that the Telegraph Company had not used proper diligence in the delivery of the message and hence was liable to the statutory penalty. After hearing the case and taking it under advisement to a succeeding term of the court, the learned trial judge, refusing all the declarations of law asked by plaintiff, found for defendant on the sole ground, as he stated, that there had been a failure to prove prepayment to the defendant Telegraph Company of the usual charges for the transmittal of the telegram.

The action here is under our statute (section 3330, Revised Statutes 1909) imposing a penalty of $300 for every neglect or refusal to transmit and deliver a message duly filed with an agent of the Telegraph Company. It is distinctly provided in this section that telegraph companies become liable for the payment of the penalty imposed by the statute only "on payment or tender of their usual charges for transmitting and delivering dispatches as established by

the rules and regulations of such . . . telegraph lines, to transmit and deliver the same to designated address," etc.

That due diligence was not used in this case is evident; in point of fact, no excuse is offered for the delay. It appears that Mr. Elder's residence in Montgomery City was well known, as were also he and his family, but, as before stated, the learned trial judge put his conclusion solely upon the ground of a failure to prepay the usual charges.

On a careful consideration of the evidence in the case and of the authorities cited by the learned counsel for appellant, we think his conclusion is correct. It is very clear that the message was not prepaid but that the operator at Troy sent it forward on the credit he gave Guinn. In point of fact, Guinn did not pay the operator until some time afterwards.

In the light of the very careful consideration given to the proper construction of this section 3330 of our statute, by this court in F. W. Brockman Commission Co. v. Western Union Telegraph Co., 180 Mo. App. 626, 163 S. W. 920, and in Nasep v. Western Union Telegraph Co., 184 Mo. App. 141, 168 S. W. 259, it is not considered necessary to go into an elaborate discussion of the law applicable here. The writer does not feel that he can add anything of service to the public or the profession to what has been so ably said by his learned colleagues in those two cases.

It is distinctly ruled in the Brockman case that marking the word "Paid" on the message is without influence, when the "facts concerning the transaction affirmatively appear, showing that the charges were not actually prepaid in cash." In the Nasep case the agent of the sender paid the charges within a few hours after the delivering and forwarding of the message, but we held that did not meet the requirement of this statute. So it is here, and so the learned trial judge found. We see no reason to disturb the finding of the

trial court on the facts, and so finding he properly refused all the declarations of law asked by appellant.

On the authority of the two cases above cited, and on the facts here in evidence, the judgment of the circut court is affirmed. *Nortoni* and *Allen, JJ.*, concur.

