## JULIA CROTTY, Respondent. v. CONTINENTAL CASUALTY COMPANY, Appellant.

**Kansas City Court of Appeals, May 13, 1912.**

1. **INSURANCE, ACCIDENT: Notice of Accident by Beneficiary.** The beneficiary in an accident insurance policy is not required to give any notice to the company of an injury to the insured until a claim matures by the death of the latter.

2. ————: ————: ————. It would be unreasonable and absurd to require the wife of the insured, who is the beneficiary of the death indemnity in an accident insurance policy, to notify the company of a possible future death claim every time her husband receives an injury.

3. ————: Right to Hold Autopsy. Where the contract of insurance against accident does not give the company the *exclusive* right to perform an autopsy on the insured in case death ensues, nor require the beneficiary to notify the company of an intention to have one performed, the holding of such autopsy without notice to the company will not forfeit the policy.

Appeal from Jackson Circuit Court.—*Hon. Thomas H. Reynolds,* Special Judge.

Affirmed.

*Rosenberger & Reed* for appellant.

*Charles L. Shannon* and *Conkling, Rea & Sparrow* for respondent.

JOHNSON, J.—This is a suit on a policy of accident insurance issued to John Crotty, January 23, 1905. Crotty died July 10, 1905, while the policy was in force and plaintiff, his widow and beneficiary of the

death benefit provided in the policy, claims she is entitled to receive the benefit on the ground that the death of her husband was caused solely by personal injuries accidentally received by him.

The defenses pleaded in the answer thus may be stated: First. That the death of Crotty was due to natural causes and not to bodily injury. Second. That notice of the alleged accident was not given in the time required by the policy. Third. That defendant was deprived by plaintiff of its right given by the policy to participate in an autopsy on the body of the insured conducted at the request of plaintiff without the knowledge or consent of defendant. Fourth. That the injuries alleged as the cause of the death of the insured did not cause at once a total and continuous inability to labor. A trial of these issues resulted in a verdict and judgment for plaintiff for the amount of the death benefit and accrued interest. Defendant appealed.

Crotty was a blacksmith employed in the machine shops of the Santa Fe Railway Company at Newton, Kansas. In the afternoon of May 27, 1905, he and a fellow workman indulged in some rough play in the course of which Crotty kicked at his playmate who grabbed his foot and jerked it in a way to throw him on his back. Crotty complained that his fall had hurt his back and, though he remained in the shop until quitting time, the evidence of plaintiff tends to show that he did no work that afternoon. In the early part of June, he reported for duty on eight consecutive days and received full pay for that period, but the workmen in the shop introduced as witnesses by plaintiff testify, in effect, that he complained of severe pain in his back, made only a pretense at working and that his fellow blacksmiths did his work for him.

On May 29, the second day after his fall, Crotty consulted a physician at Newton. The physician found a discoloration of the skin on the back and put on an adhesive plaster but he did not think the discoloration

indicated anything serious and attributed to other causes the pale and anaemic appearance of the patient and the symptoms of which he complained. On June 2, he consulted another physician who, thinking his condition might be due to malaria or some other infectious disease made a microscopic inspection of his blood and found no indications of disease. The record of the case kept by the physician shows that Crotty complained of pain in the back and head, that he was very weak, and that he did not improve very much under treatment.

About June 24, Crotty went to Kansas City and was treated by a physician there who diagnosed the case as malaria but made no examination of the blood. He returned to Newton in a few days, symptoms of paralysis developed, and on June 29, he went to Topeka and was admitted to a railroad hospital. He was found to be afflicted with slowly ascending paralysis, a disease that first manifests itself in the extremities and slowly ascends until it reaches the vital organs, when death ensues. Crotty died in the hospital of this disease on July 10, forty-three days after the accident.

Two days after the death an autopsy was held at the request of plaintiff. Two reputable physicians and surgeons opened the body and made a thorough investigation to ascertain the cause of the paralysis. They found no indication of infectious disease, but did find that both kidneys had been inflamed to an extent to disable them from the performance of their functions and they found a wound on the left kidney, indicative of a recent rupture. In their opinion this wound could have been caused by a fall such as Crotty received and the paralysis could have been caused by the poisons disseminated through the body in consequence of the failure of the kidneys to perform their office.

Defendant contends and introduced evidence in support of its position that the paralysis could not have been produced by an injury to the kidneys; that the left kidney could not have been ruptured by a fall; that Crotty some years before had suffered from a severe attack of malaria and that the paralysis must have been caused by some germ disease such as malaria. Further defendant shows that the scar on the left kidney could have been caused by syphilis and there is some slight evidence that Crotty had been afflicted with that disease. But the evidence of plaintiff strongly tends to show that he did not have syphilis and the surgeons who performed the autopsy say that the scar did not indicate that the injury to the kidney was of a syphilitic origin, and they found no trace of that disease in or on the body.

The first notice defendant received either of the accident or of the death of the insured was the following letter written by plaintiff under date of July 17th, seven days after the death:

"I notify you that John Crotty of Newton, Kansas, policy holder number 968,587, died at Topeka, Kansas, July 10, 1905, at the Santa Fe Railroad hospital of Landers Paralysis.

"Said John Crotty fell on May 27, 1905, at the shops in Newton, Kansas, and struck his back on the floor, thought nothing of the fall at the time. He had the railroad doctor put a plaster on his back, two days later he was taken with a chill and fever, he thought the chill and fever was malaria. Went to another doctor in Newton, Kansas, and he prescribed for malaria. Mr. Crotty was ill in Newton two weeks under this doctor's care. Not being benefited he came to Kansas City on June 22d, went to Dr. Doyle's on East Fifteenth street and he also prescribed for malaria. Mr. Crotty returned to Newton on June 26th, worked one day and had to quit. During all this time he thought nothing of the fall, thinking he had malaria.

He thought so little of the fall he did not put in a claim for the weekly indemnity. The railroad doctor at Newton sent him to the hospital at Topeka, Kansas. He walked around the hospital a few days. Finally the doctors there put him to bed and on July 6th he became paralyzed, dying Monday night, July 10th. His body was brought to Kansas City for burial. I told his uncle, Mr. Thomas L. Cagney, of the fall and he thought possibly that might have something to do with the paralysis.

"While his remains were at J. C. Duffy's undertakers Mr. Cagney had a post mortem held. The doctors found one kidney badly ruptured, the other blood clotted, and the spinal cord was also blood clotted. The doctors that held the post mortem said that either injury would have brought on the paralysis which caused his death and the injuries was from the fall.

"I hope you will give this your immediate attention. You can address me for the present at 515 West Thirty-fourth street, Kansas City, Mo., c/o Mr. Thomas L. Cagney."

This letter was answered by defendant on July 19th as follows:

"This company is in receipt of your favor of July 17th, notifying it of the death of your husband, formerly holder of policy No. 962587. I am obliged to inform you that under the circumstances stated by you in your letter it is absolutely impossible that you should have any valid claim against this company. The policy requires that notice of an accident be given within fifteen days thereof. According to your own statement your husband was abundantly able to give such notice and failed to do so. This company does not insure against the result of accident unless the accidental injury is of sufficient severity to cause immediate disability. If you will inspect the policy you will find a corroboration of this statement. From your letter it appears that your husband worked for sev-

Crotty v. Casualty Co.

eral days after the alleged injury and even did some work in the shop nearly a month after the alleged injury. It further appears from your letter that your husband did not die as the result of injury, but rather of disease. It is for these reasons and for others which I need not mention, as these mentioned are quite sufficient, that I say that your claim cannot possibly be valid. Nevertheless, as you request blanks on which to submit proof of loss, I herewith enclose the same to you, but request you to take notice in this connection that this company does not by furnishing this blank waive any defense that may exist to the validity of your claim, nor does it request you to supply the evidence called for by this blank. It merely sends you the blank as an act of courtesy because you asked for it and leave it to you to use it or not as you may deem for your own best interests.

"This company further notifies you that it insists upon a strict and exact compliance with all the provisions of the policy formerly held by your husband."

"I got your letter of Nov. 22d, and I am so sorry you don't intend to pay me any accident insurance, on that policy my husband bought from you. I wish you would think the matter over some more. You don't know how much I am needing this insurance. I know you would pay me if you knew how much I needed it. I wish you would please let me know what else I ought to do to prove to you that I ought to have the insurance. You know the policy is No. 968587, and if I haven't done everything I ought to do to get the insurance, please let me know what it is, and I will do it. I wish you would let me know right away. Write me at 1618 Campbell street, K. C., Mo., or write to my uncle, Mr. T. Cagney."

This letter was referred by defendant to its general attorney who answered:

"This company is in receipt of your favor of December 10th. That your claim might have considera-

tion at the hands of a different person from the one who had passed upon it before the company referred your letter and files of the case to me and asked me to review them. I have reviewed the files carefully and I am obliged to report to you that I see no reason whatsoever for this company to depart from the decision of rejection which was previously communicated to you by letter from this office under date of November 22, 1905.

"I find in the history of the claim several causes for rejection, any one of which is quite sufficient. It is unnecessary for me to mention them all or to discuss them with you. It is sufficient for me to call your attention to the facts (1) that your husband died from disease rather than from the result of an injury; (2) that this company received no notice of the alleged accident until long after the time provided in the policy for that purpose, and (3) that the alleged accident did not at once totally and continuously disable your husband so as to bring any loss which he might suffer in consequence thereof within the terms of the policy. If you will read your policy you will be forced to the conclusion that the action of this company is entirely right.

"That there may be no misunderstanding you will please take notice that this company does not hereby waive any defense that may exist to the validity of your claim, and that it does insist upon a strict and exact compliance with all the provisions of the policy formerly held by John Crotty."

The policy provided for the payment of weekly indemnity to the insured and, in case of his death, of the death benefit to his beneficiary upon condition "that said insured, while this policy is in force, shall receive personal, bodily injury which is effected directly and independently of all other causes through external, violent and purely accidental means. . . . and which causes at once total and continuous ina-

Crotty v. Casualty Co.

bility to engage in any labor or occupation.'' Other
material provisions of the policy are as follows:

"If, within ninety days from the date of the acci-
dent, any one of the following losses shall result neces-
sarily and solely from such injury, the company will
pay in lieu of any other indemnity and within ninety
days from the furnishing of proof:

"A. For the loss of life. . . . Said principal
sum. . . .

"For Loss of Time.—If such injury shall not re-
sult in any of the losses scheduled in Part I, the com-
pany will pay for total loss of time necessarily re-
sulting from injury, as before described, the weekly
indemnity stated above for a period of not exceeding
one hundred and four weeks. : . .

"Written notice of claim must be given by the
insured, or by the beneficiary, to the company at its
office from which this policy is issued, and be received
there within fifteen days from the date of the accident
causing the loss for which claim is made. Affirmative
proof must be furnished to the company at its office
on its forms, in case of loss of time, within thirty days
after the termination of the period for which the com-
pany is liable, and in case of any other loss, within
sixty days after such loss. Form may be had upon
written request to the said office of the company. . . .

"The company shall have the right and opportu-
nity to examine the insured's person or body in case
of injury when and so often as it may require, and
also in case of death the right and opportunity to per-
form autopsy on the body of the insured, as it may
deem necessary. . . .

"Strict compliance on the part of the insured and
beneficiary with all the provisions of this policy is a
condition precedent to recovery hereunder, and any
failure in this respect shall forfeit to the company all
rights to the principal sum and indemnity.''

On the back of the policy the following notice was printed in bold type: "Important.—In case of injury notify the company immediately. Read your policy.—No claim will be entertained unless written notice of injury is given to the company within fifteen days from date of injury."

Counsel for defendant insist that plaintiff cannot recover for the reason that she violated the provisions of the policy requiring the beneficiary to give notice to defendant within fifteen days after the accident. It is conceded that Crotty, the insured, did not give notice of the accident and that plaintiff, the beneficiary of the death claim gave no notice until after her husband died which was more than fifteen days after the injury. Therefore, if the stipulation relating to notice imposed on the beneficiary the legal duty of giving such notice before the death of the insured, plaintiff cannot recover because of her failure to perform that condition.

"These (the obligations to give notice of the injury and death) are made conditions precedent, and a failure to perform them in a reasonable time and manner, would invalidate all claim to indemnity." [McFarland v. Accident Assn., 124 Mo. l. c. 215, and cases cited.]

Both in the correspondence rejecting the claim and in its answer defendant asserts its right to declare a forfeiture of the policy. The law does not favor forfeitures and, in the construction of the stipulations on which one is based, gives to the language employed the interpretation it reasonably will bear that is most favorable to the maintenance of the cause. To say the least, courts will not place a strained or unnatural construction on the contract in aid of the forfeiture. The policy imposed on defendant the obligation to pay the death benefit if death resulted solely from the injury within ninety days of that event and one of the questions we shall discuss is whether

or not the notice clause under the construction given it by defendant does not have the practical effect of cutting off the death benefit in all cases where death does not ensue until the period for giving notice of the injury has expired. If it does, such interpretation must be rejected, since it would be unreasonable to give an effect to a forfeiture clause that would destroy a benefit without any fault or neglect on the part of the beneficiary.

"It is competent for parties to stipulate for such conditions as they please in regard to notice and proofs of loss provided always that such conditions are reasonable." [Hoffman v. Accident Co., 56 Mo. App. l. c. 306.]

It must be borne in mind that all claims under the policy for injuries not resulting in death accrued to the insured himself. Plaintiff had no interest in them. She was not a party to the contract and could have no claim under it until the death of the insured gave her one. As we said in Hoffman v. Accident Co., 56 Mo. App. 306:

"The beneficiary until the death of the insured, had, at most, only an inchoate and contingent interest in the policy. The insurer could not, until that event occurred, recognize her as a party to the contract having a present interest therein. She could have no claim under the contract until the death of the insured, and therefore she could give no notice of the accident or injury until that event occurred."

We regard this case as decisive of the questions in hand.

The phraseology of the notice clause in that case differs somewhat, but not materially, from the stipulation now under consideration. The reasoning in that opinion applies with equal force to the present case. Here the provision begins with the words "written notice of claim must be given. . . . by the beneficiary." Of what claim? Surely not the claim for

weekly indemnity for the beneficiary has no interest in that. And it cannot mean the claim for the death benefit for no such claim can exist until the death of the insured. If the insurer meant to require notice to be given by the beneficiary of a possible future claim, the language employed fails to express such meaning and if it did we would hold such stipulation to be unreasonable.

It is true the beneficiary was the wife of the insured and knew of the existence of the policy. But there was nothing to prevent the insured from designating his estate as his beneficiary and if he had done that in this case, what would be thought of the argument that the administrator of his estate was required by the terms of the contract to give notice of the injury before the death of the insured and, of course, before the appointment of the administrator. It is no less unreasonable and absurd to require the wife of the insured who is the beneficiary of the death indemnity to notify the company of a possible future death claim every time her husband receives an apparently slight injury.

Following our rule in the Hoffman case with which we are well satisfied, we hold that plaintiff was not in default for failing to give notice of the injury and was not bound to give defendant any notice until her claim matured by the death of the insured.

We do not think there is any substantial foundation for the claim of forfeiture based on the alleged violation by plaintiff of the autopsy stipulation. In Loesch v. Surety Co., 176 Mo. 654, the policy contained a condition that "if the company's representatives are denied the right to make examination of the insured's person or body, in respect to alleged injury or cause of death, or if post mortem be held without notifying the company in time to have its medical adviser present, then all claims under this policy shall be forfeited." The Supreme Court said:

"The design of this clause in the policy was to enable the company to learn the cause of the death of the insured as that cause might be shown by a post mortem examination if one should be held. Whatever such an examination might show, the defendant was entitled to an opportunity to know. It is a reasonable requirement, under reasonable interpretation, and a violation of its terms under circumstances reasonably showing disadvantage to the company, would work a forfeiture of the policy."

Unlike the stipulation considered by the Supreme Court the one before us did not attempt to forbid the holding of a post mortem without the consent of defendant, but merely provided that defendant should have the right and opportunity to perform an autopsy "as it may require" or "as it may deem necessary."

Plaintiff gave no notice before the autopsy but immediately after she informed defendant of what had been done and defendant, in its letters declining to pay the loss, made no complaint that any contract right had been infringed by plaintiff on this score, nor did defendant ever request that it be allowed to perform an autopsy. The defense that the autopsy was a ground of forfeiture was not even suggested until defendant filed answer to plaintiff's petition. That defense is based on the facts that one of plaintiff's surgeons removed the left kidney to his laboratory and dissected it for the purposes of a microscopic and analytical examination and that he removed a piece of the spinal cord and lost it. Defendant complains that an autopsy, had one been requested, would have been useless under such circumstances and, therefore, that the claim should be declared forfeited because plaintiff destroyed the opportunity to examine the affected parts defendant might have requested.

One trouble with this contention is that counsel misconceives the nature of the right the contract au-

thorized defendant to exercise. The contract, as we have said, did not attempt to give defendant the *exclusive* right to perform an autopsy nor did it even require plaintiff to notify defendant of her intention to have one performed. If defendant desired, such exclusive or participating right it should have said so in the contract. As we have said before we will not read a meaning into the stipulation not clearly expressed, especially when such meaning works a forfeiture of a right.

Next, it is argued by defendant that the injury received by Crotty is not shown to be the direct and sole cause of his death and that it did not cause "at once total and continuous inability to engage in any labor or occupation." Crotty was insured "as a blacksmith not a horse-shoer." Plaintiff's evidence shows that just before the injury he was a strong, healthy man and there is abundant evidence that he was not afflicted with any infectious disease that could cause paralysis. There is credible expert evidence that a rupture of a kidney could be produced by a fall and paralysis may be caused by the poisoning of the nervous system as well as by the lack of sufficient nutrition caused by the impoverishment of the blood. The theory that nerve disorders and diseases may be caused by the failure of the depurating organs to perform their functions is reasonable and has the support of eminent scientific authority. We find no reason for discrediting the testimony of plaintiff's experts and hold that the casual connection between the injury and the death was shown in a way to raise an issue of fact for the jury to determine.

As to the question of whether or not a total and continuous inability to perform any labor or occupation resulted from the injury we think the evidence of plaintiff tends to show that her husband was disabled within the meaning of the policy. Through the

kindness of his fellow workmen who did his work for him he was enabled to draw his pay for a few days, but the fact plainly appears that he was in no condition to work and did no work of any consequence. The contract does not say that the insured must be confined to his bed or unable to sit up or walk around but that he must be unable "to engage in any labor or occupation." That is to say, if he is a workingman, he must be unable to hold a position at any kind of manual labor. The jury were justified by the evidence in the belief that Crotty was incapacitated within this definition which is the most favorable meaning to defendant's position the language will bear.

The demurrer to the evidence was properly overruled.

Objections argued by defendant to the rulings of the trial court on questions of evidence and in the giving and refusal of instructions have been carefully examined and are held not to be well taken. The case was fairly tried and submitted. The point relating to the alleged misconduct of a juror is answered in our opinion in McGraw v. O'Neil, 123 Mo. App. 691.

The judgment is affirmed. All concur.