ISRAEL BERLAN, RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, APPELLANT.

Kansas City Court of Appeals. February 17, 1930.

*Harry Friedberg, Isadore Rich* and *Meyer M. Rich* for respondent.

*Meservey, Michaels, Blackmar, Newkirk & Eager* and *Roy P. Swanson* for appellant.

ARNOLD, J.—This is a suit to recover on a policy of accident insurance.

Defendant is a corporation organized and existing under and by virtue of the laws of the State of New York, and authorized to write accident insurance in the State of Missouri, maintaining an office in Kansas City, Missouri, for that purpose. Plaintiff is a resident of Kansas City, Missouri, engaged in the business of general merchandising at 1412 East Eighteenth street in said city.

On October 6, 1922, in consideration of the payment of $19 premium, defendant issued its policy of that date insuring plaintiff for a term of twelve months "against the results of bodily injuries sustained while this policy is in force, and caused directly and independently of all other causes by violent and accidental means," as provided in clause 1 of said policy. The policy is made an exhibit and attached to the petition herein.

At the expiration of the said twelve months, the policy was renewed and an additional premium paid for another twelve months. The policy provided for the payment of $5,000, in case of death under the terms thereof, and further provided plaintiff was to

receive the sum of $25 per week for total disability and $12.50 per week for partial disability, and the further sum of $100 for any surgical operation involving cutting into the abdomen for treatment of the organs therein. Further, the policy provides in clause 8 thereof:

"If any injury covered by this policy shall, within ninety days from the date of the accident, directly and independently of all other causes, necessitate any surgical operation named in the schedule of surgical operations endorsed hereon, the company will pay the insured the sum set opposite the said operation in the said schedule, provided always that if more than one such operation shall be necessitated as the result of any one accident, payment shall be made only for the operation first occurring."

Clause 9 provides, in part:

"Nor shall it cover accident, injury, disability, death or other loss caused wholly or partly by disease or bodily or mental infirmity or medical or surgical treatment therefor, or by ptomaines, or by bacterial infection (excepting only septic infection of and through a visible wound accidentally sustained)."

Further the policy provides:

"No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company and such approval be endorsed thereon."

. . . . . . .

"Written notice of injury on which claim may be based must be given to the company within twenty days after the date of the accident causing such injury."

. . . . . . .

"Such notice given by or in behalf of the insured or beneficiary, as the case may be, to the company at New York, or to any authorized agent of the company, with particulars sufficient to identify the insured, shall be deemed to be notice to the company. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."

The schedule of operations referred to in clause 8, includes the following: "Abdomen—cutting into for treatment of organs therein." The petition alleges that on or about the 1st day of November, 1923, and while the said policy was in force, plaintiff was injured violently and accidentally in his place of business at 1412 East Eighteenth street in Kansas City, Missouri, while engaged in an attempt to move a large iron safe by use of a crowbar, and that plaintiff was "straining himself to move said safe;" that he slipped and fell against said crowbar, the end thereof striking him in the

abdomen, thus causing plaintiff to sustain a hernia; that by reason of said injury plaintiff was rendered partially disabled from November 1, 1923, until the 21st day of January, 1924; that he underwent a surgical operation involving cutting into the abdomen for treatment of the organs therein on said 21st day of January, 1924, and that he was totally disabled and confined to a hospital from said date to February 20, 1924; that on said last named date, he was removed to his home and continued to be totally disabled from said date until March 20, 1924; that plaintiff remained partially disabled from that date until April 24, 1924, entitling him in all to the sum of $425 covering disability, and to the further sum of $100, covering the surgical operation; that plaintiff complied with all the terms and conditions of said policy and in due time after the injury and more than sixty days before the commencement of this action, plaintiff gave defendant due notice and proof of his loss, but that defendant failed and refused to pay the amount claimed under the terms of said policy; "that defendant without reasonable grounds or just cause and in bad faith has vexatiously refused to pay plaintiff's claim, to plaintiff's further damage in the sum of $52.50 as damages for vexatious delay and in the further sum of $300 as damages for attorney's fees for the prosecution of this action."

The prayer is for judgment for $525 actual damages, $52.50 for vexatious delay and the further sum of $300 as attorney's fees, and for costs.

The answer admits the corporate status of defendant and that it transacts business in the State of Missouri; that the accident policy was issued to plaintiff as alleged in the petition; states that it was provided in the policy that said insurance should not cover accident, injury, disability, death or loss caused wholly or partly by disease or bodily or mental infirmity; that no agent should have authority to change said policy or waive any of its provisions, and that no change in said policy should be valid unless approved by an executive officer of said company, and be endorsed on the policy; that it was provided in said policy that written notice of an injury upon which claim might be based must be given to said company within twenty days after the date of the accident causing the injury; that, with the consent of the company the policy might be periodically renewed upon successive expirations thereof, on payment of the specified premiums; that the policy herein was, in fact, renewed for a period of twelve months subsequent to the original twelve months.

The answer avers that if plaintiff was injured as alleged in his petition, said injuries were caused by physical strain, or inherent physical weakness or defects or bodily infirmity, and were not caused directly and independently of all other causes by violent

and accidental means as required by the terms of the policy; that if plaintiff was disabled at all by the alleged injury set up in the petition, he was not continuously and wholly disabled within two weeks following November 1, 1923, the date alleged in the petition of said accident, nor was plaintiff within two weeks of said date, or immediately following any total disability (as defined in said policy and required by the terms thereof), continuously disabled and prevented from performing some one or more important daily duty, or duties, pertaining to his occupation. The answer further affirmatively states that no written notice of the alleged injury was furnished to defendant until on or about January 10, 1924. The answer is further a general denial. The reply also was a general denial.

The record discloses this suit originally was instituted in a justice court where there was a judgment for the defendant. From this judgment plaintiff appealed to the circuit court where plaintiff was non-suited, and thereupon he dismissed the case, and later instituted the present action which, on trial in the circuit court, resulted in a verdict for plaintiff, as follows:

"We, the jury, find the issues for the plaintiff and allow the plaintiff the full amount of his claim, $525, plus ten per cent, $52.50 additional and $175 for attorney's fees, making a total of $752.50."

Judgment was accordingly entered. Motions for a new trial and in arrest of judgment were duly filed. In consideration of the motion for a new trial, the court indicated that unless plaintiff remitted from the verdict the sum of $227.50, and all accrued interest on said amount, the motion for a new trial would be sustained. The required *remittitur* was made and in order that it should be effective, the court ordered the judgment set aside and in lieu thereof, judgment be entered for $525 for plaintiff. The motion for a new trial and in arrest then were overruled, and defendant has appealed.

In its brief, under Point 1, defendant urges plaintiff did not meet the burden of showing the alleged injuries were caused "directly and independently of all other causes by violent and accidental means;" that the evidence fairly shows they were not so caused, but that they were "caused wholly or partly by disease or bodily or mental infirmity." And under Point 2, it is urged the evidence shows the alleged hernia was "caused wholly or in part by disease or bodily or mental infirmity," and therefore, not within the terms of the policy. Being so closely related these two points may be considered together.

At the close of plaintiff's case and again at the close of all the evidence, defendant asked and the court refused an instruction in the nature of a demurrer. The motion for a new trial embraced these rulings and charged them as error and the two assignments of

error above mentioned are directed to the same rulings. In considering these charges it will be necessary to review the evidence to some extent.

Plaintiff testified that in an attempt to move a large safe, weighing several tons, in his store, he used a crowbar by inserting one end under a corner of the safe, exerting pressure upward on the crowbar; that the safe had for years been standing in the same place and was somewhat imbedded in the floor; that the safe was on wheels, but being so imbedded it was difficult to move; that while he was straining upwards on the crowbar, he slipped and the upper end of the crowbar struck his left groin; "it knocked the wind out of me and I had some severe pains, and I could not continue to work any longer."

He further testified that he stripped and looked at his side where the crowbar had struck him and found it bruised, discolored and swollen; that he fell when struck, got up and sat in a chair for awhile and when he felt able, he examined his side as above stated, and that within an hour, or an hour and a half, after the accident, he went to his home where he remained until noon the following day. That on November 9, 1923, defendant's agent, one Teplitz, came to plaintiff's store to collect the renewal premium on his policy, at which time plaintiff told Teplitz he had had an accident, and Teplitz told his him that he would get plaintiff a form to fill out; that he did not hear from the company for several days, or perhaps a week, when he called up defendant's office and told the young lady who answered the telephone call about his injury and that he had reported the accident to Mr. Teplitz who had agreed to send some forms which plaintiff had not yet received; that she replied, "If you reported to Mr. Teplitz, everything will be properly taken care of." Plaintiff also testified that after he discovered the swelling in his groin, he thought it a temporary matter and undertook to massage it himself and applied Sloan's liniment, but the treatment was without beneficial results; that on January 9, 1924, the swelling was causing him so much pain that he went to see Dr. I. J. Wolf, who told him his ailment was inguinal hernia and advised an operation; that an operation was performed at St. Joseph Hospital, Kansas City, Missouri, on January 21, 1924; that he remained in the hospital until February 20, following, and then went home where he was confined until March 20, or 21, 1924, when he returned to his store; and that he continued partly disabled until April 20 or 23, 1924; that, during the period from November 3, 1923, to January 21, 1924, he was unable to do any heavy lifting or reaching for things on the shelves and was unable to remain on his feet long and that he did not perform his usual duties during that period; that he never had suffered any pain in his left groin before he fell on the crowbar, as stated; that that was the first time he knew about it; and that he had never had any trouble with hernia

before this accident. Plaintiff testified he was examined for hernia on at least two occasions prior to the issuance of the policy herein, by physicians for defendant, and no hernia was found.

Defendant contends that the question decisive of the issues herein presented is whether the alleged slip, or fall, of plaintiff actually caused the hernia, and that the burden of proof is on plaintiff to show by a preponderance of the evidence that it was so caused. In support of its position that the evidence shows the alleged hernia was caused wholly or partly by disease or bodily or mental infirmity, defendant placed on the witness stand Doctor J. Park Neal as an expert, and his testimony was that in all inguinal hernia, particularly in the groin region, there is a congenital underlying cause, consisting of a weakness of the abdominal structures and the abdominal wall and lining; that in such cases the canal does not fully close as it normally should, and the peritoneum or lining of the abdominal cavity sags into this opening, perhaps slightly, perhaps clear into the scrotum, or varying somewhere in between; that this is a preformed sac; probably, until a strain occurs and forces some of the abdominal contents into the sac, the man does not know the condition; when the contents enters it usually becomes observable.

Doctor Neal further testified that in his opinion the fall described in plaintiff's evidence could not cause the hernia, and that the ordinary cause of inguinal, or groin, hernia, is the congenital weakness or sac, plus a strain or continued strains. Replying to a hypothetical question embodying the facts of plaintiff's case, he said:

"The hernia had to have the preformed sac. The strain may have forced some omentum or a piece of gut into the sac; I would not consider the blow had anything to do with it."

On cross-examination Dr. Neal testified that hernia could be caused by a blow, but if so, the blow would have to be such as to tear the abdominal walls and muscles; but that in such a case, the man would be immediately disabled and in bed for weeks, or be compelled to undergo an immediate operation; that in any straining or slipping, the abdominal walls became tense, and that would tend to ward off a blow.

Doctor I. J. Wolf, testifying for plaintiff, was asked a hypothetical question which recited the facts relative to the alleged injury, and he answered that such an occurrence could cause a rupture. The witness then stated that if a man who never previously had a rupture, or hernia, and the particular thing happen to him as described in the evidence and the hypothetical question, the same could cause a rupture. On cross-examination, Dr. Wolf was asked:

"Q. Now, doctor, isn't it true there is a congenital element in practically all hernia? A. In a great many; not in all.

"Q. That means an inherent, pre-existing weakness that causes this to open up on a strain? A. Yes, sir.

"Q. And where a hernia sac does form, aand this opening is made, it is practically always from a strain, isn't it, plus an inherent weakness? A. It is generally a strain, plus an inherent weakness, or an inherent weakness plus a strain."

And so, with the conflicting theories presented by these two eminent surgeons, in evidence, it is clear the question as to whether the alleged hernia was due to a preformed sac, or whether it was due to the strain, the slip, blow, or fall, was for the jury to determine. The question was presented in defendant's instruction No. 6. We are therefore not authorized to disturb the verdict of the jury in this respect.

Defendant strongly urges the testimony fails to prove the hernia was produced by accidental means, independent of all other causes, and relies chiefly upon the opinion in Caldwell v. Traveler's, etc. Co., 305 Mo. 619, 267 S. W. 907. In its brief defendant states:

"The Caldwell case reviews the authorities at length and definitely settles this question so far as Missouri is concerned. It was necessary, therefore, for plaintiff to show affirmatively a 'fall' or 'slip' or something of the sort in order to come within this construction of the term 'accidental means' and that such 'fall' or 'slip,' if any, caused the result complained of. . . . We are concerned only with the law as it stands since the Caldwell case."

We have had occasion heretofore to examine the Caldwell case and now do so again. It is a fine, well-reasoned opinion and goes deeply in to an analysis of the numerous cases cited therein. The facts of the Caldwell case are not on all fours with the case at bar. The claim in that case was based upon an allegation that a surgical operation for two hernias resulted in an obstruction of the bowels and death. The court reasoned that, assuming the obstruction of the bowels and the ensuing death were the unusual and unexpected result of the operation, skillfully done at the request of the insured, *intentionally* done, the death was not the result of accidental means. The court held the true rule is that where an unusual or unexpected result occurs by reason of the doing, by the insured of an intentional act where no mischance, mishap or slip occurred in the doing of the act itself, the ensuing injury or death is not caused through accidental means; that it must be made to appear that the means used to produce the injury was accidental and it is not enough that the result may be unusual, unexpected or unforeseen. (Citing, analyzing and applying numerous cases.)

This announcement of the rule is enlightening and furnishes a safe and reasonable guide, but in none of the cases so analyzed do we have the facts as presented here. If plaintiff's testimony is true (and it must be so accepted for the purposes of the demurrer),

the alleged accident which caused the injury was unexpected, unforeseen, and lay either in the slipping of plaintiff or his fall against the crowbar, or both. The ruling in the Caldwell case does not apply here, or if it does, it is in plaintiff's favor. The numerous citations of defendant on this point are held to be not to the contrary. We hold the trial court was not in error in overruling the demurrer to the evidence in respect to this point.

Defendant contends that under the terms of the policy there may not be alternating periods of disability; that the verdict includes improper elements of disability, and that plaintiff was improperly permitted to amend his petition. The first part of this charge is that the evidence, reasonably construed, does not show any total disability resulted within the time required by the policy, and alternating periods of disability cannot be considered. In support of this position defendant cites Martin v. Traveler's Ins. Co., 276 S. W. 380; Mullins v. Protective Assn., 181 Mo. App. 394, 168 S. W. 843, and seven cases from foreign jurisdictions. The policy in the case at bar provides:

"Clause 2. Total disability. If such injuries shall not result as specified in Clause 1, but directly and independently of all other causes, shall, within two weeks from the date of the accident, continuously and wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation, the company will pay the insured the weekly indemnity above specified for the entire period of such total disability.

Clause 3. Partial disability. If such injuries shall not result as specified in Clause 1, but, directly and independently of all other causes, shall, within two weeks from the date of the accident or immediately following total disability, continuously disable and prevent the insured from performing some one or more important daily duty or duties pertaining to his occupation, the company will pay the insured one-half of the weekly indemnity above specified for the period of such partial disability, not exceeding twenty-six weeks."

The testimony on behalf of plaintiff shows that plaintiff was disabled after the accident, and within an hour and a half, went home where he remained until noon of the following day, and that from November 3, 1923, until April 24, 1924, plaintiff was at least partially disabled, continuously. During that period the operation in question was performed and plaintiff was totally disabled therefrom from January 21, to March 20, 1924.

Defendant's position is that the jury, by its verdict, allowed compensation as claimed in the original petition, $425, covering periods of alleged disability, as follows:

"Partial: Nov. 1, 1923 to January 21, 1924.
"Total: January 21, 1924 to March 20, 1924.
"Partial: March 20, 1924 to April 24, 1924."

After the evidence was all in, plaintiff was allowed to amend his petition by interlineation, as follows:

"That by reason of the aforesaid injury, plaintiff was rendered totally disabled on November 1 and 2, 1923, and partially disabled from the 3rd day of November, 1923, to the 21st day of January, 1924.

In the Missouri cases above cited, the opinions hold the disability did not begin within the period named in the policy, but in the case at bar that situation is not present. The point made by defendant is that the periods of total and partial disability were alternating to the extent suggested.

Addressing ourselves to the charge the court erred in permitting the amendment in the manner above stated after all the evidence was in, we call attention to section 1274, Revised Statutes 1919, as follows:

"The court may, at any time before final judgment, in furtherance of justice, and on such terms as may be proper, amend any record, pleading, process, entry, return or other proceedings, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved."

The amendment complained of did not substantially change the claim or the defense. Discretion of the trial court in allowing amendments will not be interfered with on appeal unless such discretion has been abused. [Laughlin v. Leigh, 226 Mo. 620, 639, 126 S. W. 143; Tower v. Pauly, 67 Mo. App. 632.] The same rule applies to a pleading amended so as to conform to the proof, provided the amendment does not substantially change the claim or defense. [Adcox v. Telegraph Co., 171 Mo. App. 331, 157 S. W. 989.] This point is ruled against defendant.

Further it is charged the judgment is excessive to the extent that it allows total disability for the period during which plaintiff was confined to the hospital, to-wit, January 21 to March 20, 1924. Defendant argues that even after amendment of the petition the only total disability claimed as having been begun within two weeks from the date of the alleged injury, as expressly required by Clause 2 of the policy was the two days claimed in the amendment; that any total disability to entitle plaintiff to compensation, must be continuous, i. e. plaintiff must have been "continuously and wholly disabled" and prevented from performing any and every kind of duty pertaining to his occupation. And such disability must have begun within two weeks from the date of the accident. The injury is alleged to have occurred November 1, 1923, and plaintiff's con-

finement in the hospital began January 21, 1924, and continued to March 20, 1924.

We think defendant is right in this contention. However, the petition alleges continuous disability, total or partial, from November 1, 1923, to April 24, 1924, and the testimony tends to support this allegation. Clause 3, above set out, covers this situation as to partial disability. We conclude, therefore, that plaintiff is not entitled to compensation for total disability for the period from January 21 to March 20, 1924, but is entitled to partial disability for that period under clause 3 of the policy, under the rule that the greater includes the lesser claim. This error can be cured by *remittitur*.

It is further charged there was no sufficient notice given defendant and there was no waiver of notice; that there was no written notice given defendant within twenty days after the accident, as required by the policy. On this point the testimony shows that on November 19, 1923, an agent of defendant came to plaintiff's place of business and there collected a premium due on a renewal of the policy and that at this time plaintiff told the agent of the accident, and the latter said he would send him blank proofs, which he did, later, but not within the twenty days required by the policy. Before the blank proofs were received, plaintiff called up the Kansas City office of defendant and told the person who answered the telephone of his conversation with the agent, and she assured him the blanks would be forthcoming. It is plaintiff's contention that this act of the accredited agent of defendant constituted a waiver of notice. There is no denial that Teplitz, the agent who collected the premium on November 9th was the agent of defendant. It is the law that when they promise to do so, insurance companies must furnish blank proofs of loss. In this case the testimony of plaintiff shows the request therefor was made within the twenty-day period for written notice.

"Where a general agent of defendant indemnity insurance company, who was notified orally of plaintiff's claim made no objection, and fairly led plaintiff to believe that giving of a written notice was unnecessary, defendant is estopped to defendant on the ground of lack of written notice." [Wagon Co. v. Casualty Co., 134 Iowa, 775, 167 N. W. 204; 7 Cooley's Br. on Insurance, p. 6092.] A prohibition in an indemnity policy against waiver of its conditions except in writting does not apply to stipulations to be performed after loss, such as giving notice and furnishing preliminary proof, and especially, as here, where the insurer actually assumes control of the litigation involved. [Rogers v. Indemnity Co., 189 Mo. App. 82; 7 Cooley's Br. on Insurance, p. 693.] Defendant insists the petition does not plead waiver. This, however, is not necessary in insurance cases.

[Makos v. Acc. Ins. Co., 234 S. W. 369.] We rule against defendant on this point.

It is charged the court erred in ruling on the admissibility of the testimony of Dr. Wolf, in that the hypothetical question asked the doctor did not include all necessary facts in evidence; that the witness was not even asked whether, in his opinion, the events related could, would or might cause rupture. The record shows the witness was asked: "Could that cause a rupture?" And the answer was "Yes." In its objection, defendant does not specify the material facts omitted from the question. Under these conditions we may not convict the court of error.

It is objected that the court erred in permitting plaintiff to testify that he was still partly disabled. The testimony objected to in this connection is plaintiff's statement that he was unable to perform certain duties required by his occupation, the objection being that this was a mere conclusion of the witness. Such objection is without merit in view of the fact that plaintiff testified as to certain duties of his occupation which he was unable to perform. This point also must be ruled against defendant.

Certain remarks of the court are attacked by defendant as being prejudicial. This objection is directed to the following occurrence made during the examination of plaintiff. After objection had been made to the question as to whether or not plaintiff had been examined for hernia by a physician for the company, the court remarked:

"Well, he could testify how they examined him. We all know how they examine for hernia. You may ask how they did to him."

Also the following:

"THE COURT: Did he examine you to find out if you had a rupture?

"MR. EAGER: Object to that as calling for a conclusion of the witness.

"To the failure of the court to rule, the defendant then and there duly excepted at the time and still excepts.

"THE WITNESS: Yes.

"To which answer and the failure of the court to sustain said objection, the defendant then and there duly excepted at the time and still excepts.

"THE COURT: Did he examine you by placing his fingers on your groin?

"THE WITNESS: Yes, he told me to strip to the waist, and he put his fingers on my groin and told me to cough.

"Q. Dr. Carnahan did that? A. Yes, Dr. Carnahan and I think Dr. Trowbridge also.

"THE COURT: The objection is sustained, of course, as to this exhibit, and the jury are instructed to disregard it. You have other evidence.

"Mr. Rich: It is not proper to introduce it in evidence?

"The Court: The examination is the same thing."

It is urged these questions of the court called for conclusions and that the court's remarks practically instructed the jury that plaintiff had been examined by these doctors for hernia; and that the remarks were entirely outside the duties and functions of the court. We are not impressed with defendant's position in this respect, and rule against his contention.

Under point 6, defendant insists "various errors occurred in the instructions." It is charged against plaintiff's instruction "A" that it used the term "accidental means" without defining it. The rule is that if the defendant desires a definition of terms, it should ask that it be defined. We cannot attach great weight to this objection because defendant's instruction 3, given by the court, contained the same alleged vice. We have carefully examined plaintiff's instruction "A" and find it clearly states the law in all respects charged, and is not erroneous. Other objections are made to instructions of plaintiff but they are clearly without merit and require no further discussion.

It is urged the jury should have been discharged for prejudicial remarks of counsel for plaintiff in his closing argument. The remarks strongly objected to was: ". . . they have got to make some kind of a defense. They have got to cook up something."

Defendant's counsel objected and asked the court to reprimand counsel and instruct the jury to disregard the remark. The court failed to comply with the request and gave as his reason that the argument was provoked by what had been said by counsel for defendant. The court said:

"The court recalls the language, and thinks the language fully called for under the argument made by the defense counsel, of which no record has been made because nobody requested it, therefore the jury will not be discharged and your motion is overruled."

Under these circumstances we are not authorized to disturb the ruling of the court in this respect.

Finally it is urged the judgment is excessive in that it allowed $100 for the surgical operation. We think the allowance was proper under the terms of the policy which provides such an allowance under its schedule of surgical operations, as follows: "Abdomen—Cutting into for treatment of organs therein—$100. It is insisted the operation for hernia does not require cutting into the abdomen. Dr. Wolf testified:

"We don't enter the abdomen during an operation for hernia . . . No, it was performed by opening that canal. That is not the abdomen."

The testimony shows the canal referred to leads into the abdomen, and in operations for hernia, parts of the bowels must be pushed

back into the abdomen. The bowels are normally contained within the abdominal walls and are considered "organs therein." Webster's International Dictionary defines abdomen as follows:

"The belly; the part of the body between the thorax and the pelvis. Also, the cavity of the belly, lined by the peritoneum, and containing the stomach, bowels, etc."

The witness seems to have adopted the more restricted meaning, whereas in insurance policies the meaning most favorable to the insured is adopted. There was no error in this respect. From what we have already said, however, the judgment is excessive in allowing plaintiff for total disability from January 21 to March 20, 1924, a period of 8⅔ weeks. Therefore, if, within ten days from the filing of this opinion, plaintiff shall remit the sum of. $101.80, the judgment will be affirmed; otherwise, it will be reversed and the cause remanded for a new trial. It is so ordered. *Bland, J.*, concurs; *Trimble, P. J.*, absent.