Hershel MONTGOMERY, Plaintiff-Respondent,

v.

The TRAVELERS PROTECTIVE ASSOCIATION OF AMERICA, Defendant-Appellant.

No. 8781.

Springfield Court of Appeals.

Missouri.

Oct. 17, 1968.

*Motion for Rehearing or to Transfer Denied Nov. 11, 1968.*

Orville C. Winchell, Lebanon, for defendant-appellant.

Donnelly, Baldwin & Wilhite, David E. Wilhite, James E. Baldwin, Lebanon, for plaintiff-respondent.

TITUS, Judge.

The Travelers Protective Association of America, a fraternal benefit society and the defendant below, appeals from a $1,000 judgment entered on a nine-man jury verdict returned in the Circuit Court of Laclede County in favor of plaintiff Hershel Montgomery, a Class A member of the association. Plaintiff sued for disability benefits resulting from a herniated lumbar disc received in a January 17, 1966, accident, together with interest, damages for vexatious refusal to pay and attorney's fee. Provisions of the society's Constitution governing the benefits payable by the society and with which we are concerned, read:

> *Article X, Section 5*—"Whenever a Class A member * * * shall through * * * accidental means receive bodily injuries which shall * * * immediate-

ly, continuously, and wholly disable him from transacting any and every kind of business pertaining to his occupation * * *, he shall, upon compliance with and subject to the other provisions, conditions and limitations of this Constitution be paid for the loss of time occasioned thereby [the sums therefor so specified]."

*Article XII, Section 5*—"Any member * * * sustaining an injury * * * must * * * notify the Secretary-Treasurer * * * in writing within thirty days of the event causing the injury * * *. Should the member fail to give notice as hereinabove provided for * * * [he shall not] be entitled to receive any benefits * * * unless it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."

In its brief under the caption "Points Relied On," defendant asserts: "I. The plaintiff-respondent was not immediately and continuously disabled as required by Article X, Section 5 * * * and the amendment in petition on the date of trial was in error. II. Article XII, Section 5 * * * provided for written notice of injury * * * within thirty days and failure results in forfeiture upon non-compliance." Injected in the "Argument" portion of the brief (without the issues having been mentioned under "Points Relied On" and with no citation of authority save "Section 378.-530, R.S.Mo 1959") are two abstractions, to-wit: (a) "Since defendant is a fraternal benefit society * * * they are not subjected to vexatious delay and attorney fees * * *," and (b) "It is hard to determine * * * why the jurors came in with a quotient verdict."

▇▇▇ As to the abstractions just quoted, we first note there is no section of our statutes numbered 378.530, as cited by defendant, and that, contrary to the assertion, V.A.M.S. § 378.330 subjects a fraternal benefit society to damages for vexatiously

refusing to pay and for a reasonable attorney's fee in proper circumstances. Also, as the jury was instructed in the form dictated by MAI 32.10 and returned its verdict only allowing damages *"under the policy"* (our emphasis), defendant is not in a position to complain, as no award was made for interest, for vexatious refusal to pay or for an attorney's fee. Defendant's statement that "the jurors came in with a quotient verdict" has no support in the record and cannot be accepted as a substitute for factual proof. Landers v. Smith, Mo.App., 379 S.W.2d 884, 887(4). For a verdict to be a quotient verdict it must be shown there was a prearrangement among the jury to accept and be bound by the unknown and unascertained quotient. Jones v. Midwest Pre Cote Company, Mo., 412 S.W.2d 468, 471 (1–2). Where, as here, there is no proof to the contrary, we presume the verdict was proper and not a quotient verdict. Kamo Electric Co-operative v. Earnest, Mo.App., 277 S.W.2d 876, 878(2). Moreover, only nine of the twelve jurors signed the verdict, which makes it self-evident the verdict returned was not the result of an agreement in advance by the entire jury to accept the unknown and unascertained quotient. Another reason we summarily dispatch the issues raised by defendant for the first time in argument is that we are obliged on an appeal to determine only those questions stated in the "Points Relied On." Holman v. Fincher, Mo.App., 403 S.W.2d 245, 249; Hough v. Jay-Dee Realty and Investment, Inc., Mo.App., 401 S.W.2d 545, 549(2). Matters which defendant has but casually alluded to in the argument portion of its brief without having stated them under "Points Relied On" are not preserved or presented for appellate review. Pruellage v. De Seaton Corporation, Mo., 380 S.W.2d 403, 405(3, 4).

▇▇▇ The concluding phrase of the first point relied on, supra, pertains to the leave granted plaintiff immediately before trial to amend the petition changing the inception date of disability. Contrary to the requirements of V.A.M.R. 83.05(a) (3) and

(e), defendant does not undertake to show wherein and why such action was erroneous or why it is contended the court nisi was wrong in permitting the amendment. There is no citation of authority to this point and it is pursued in argument only by the conclusion, "The Court, allowing an amendment on the date of the trial, precluded the defense from preparing for this particular evidence. Until that date it was clear, from the pleadings, that the plaintiff had no cause of action * * *. Appellant contends the trial court abused its discretion in allowing the amendment, changing dates of disability on the date of trial * * *." The manner and form in which this "point" has been presented would justify us, without further ado, in considering it to have been abandoned on appeal. Holt v. Queen City Loan & Investment, Inc., Mo., 377 S.W.2d 393, 400 (13). However, the amendment in the petition changed the date of the commencement of disability from April 27, 1966 to January 17, 1966. In its answer filed long before trial, defendant affirmatively pleaded, "the Constitution * * * requires that bodily injury must cause immediate disability and must continuously disable the member," thus making it patent defendant was fully aware of what plaintiff's proof would have to be to permit recovery, and what defendant's evidence would have to be to sustain its defense. The amendment did not change the requirements of the claim or of the defense. See the case of Berlan v. Metropolitan Life Ins. Co., 224 Mo.App. 938, 948(4), 24 S.W.2d 686, 691(4), where, in a suit on a policy of accident insurance, the court of appeals sustained the action of the trial court in permitting plaintiff to change the date of the inception of total disability "after all the evidence was in." For more than a year before trial the defendant in the instant case had in its possession plaintiff's statement that he had experienced total disability and had stopped "working as a result of this injury * * * about January 19, 1966." When leave to amend the petition was requested and allowed (V.A.M.R. 55.-53; V.A.M.S. § 509.490), defendant did not, and very well could not persuasively, claim surprise; neither did it request a continuance. In such circumstances it was discretionary with the trial court to permit the amendment. Browder v. Milla, Mo.App., 296 S.W.2d 502, 508(13). Amendments to pleadings should be liberally permitted, and whether a particular amendment is to be allowed is primarily within the sound judicial discretion of the trial court. Defendant has not shown us that the trial court's discretion was palpably and obviously abused, and its action will not be disturbed. Parson's Construction Co. v. Missouri Public Serv. Co., Mo., 425 S.W.2d 166, 174(13); Pender v. Foeste, Mo., 329 S.W.2d 656, 659 (4). Although the remaining abstractions appearing in "Points Relied On," supra, do violence to V.A.M.R. 83.05(a) (3) and (e), we will consider them on their merits, V.A.M.R. 83.24, and, as is our duty, recast the evidence and the reasonable inferences therefrom in a light favorable to the plaintiff and the verdict of the jury. Brozovich v. Brozovich, Mo.App., 429 S.W.2d 330, 331 (1); Woods v. Standard Personal Loan Plan, Inc., Mo.App., 420 S.W.2d 380, 381 (1); Henry v. Baker, Mo.App., 419 S.W.2d 486, 490(3); Schultz v. Queen Insurance Company, Mo.App., 399 S.W.2d 230, 232 (1).

In January 1966 the plaintiff was 68 years of age and a resident of Lebanon, Missouri. He and two carpenters in his employ were engaged in building hillside cottages overlooking a lake. To prevent the hill from "washing," a concrete wall or rock ledge "twenty-six or twenty-seven inches tall" had been constructed and, according to plaintiff's petition, testimony and preliminary statement to defendant, it was on January 17, 1966, at either 10 a. m. or 3 p. m., that he was injured when he stepped or jumped from the wall. "I kind of jumped off it * * * I felt like I hit the ground about ten times as hard as I generally had and it did something in my back." Prior to this Mr. Montgomery had experienced discomfort in his back and leg due to arthritis "that had come and gone over the years." The "something in my back" which

plaintiff felt after jumping off the ledge was "of the same nature generally as to the trouble" he had previously experienced with arthritis, "but it was much more worse * * * I thought it had just flared up my arthritis more * * * I didn't do any more work after that at all * * * I went back [to the lake] the next two or three days * * * [and] drove down on Friday and paid the boys * * * and then I quit going back." The tenor of plaintiff's testimony throughout was that he simply surmised the event had activated his pre-existing arthritis, and that he was wholly unaware it had produced a herniated disc in his back until he was advised of such fact by Dr. McAlhany.

Mr. Montgomery had been under the care of Glenn O. Turner, M.D., of Springfield, since April 1960, primarily for "digestive disturbance or a weight control problem," and had a March 16, 1966, appointment scheduled with the doctor at the time of the accident. Because of this, as plaintiff says, he did not contact a doctor immediately following the accident but "took aspirins and anacins [to keep] the pain down as good as I could" until the appointment was due. On the appointed day Dr. Turner examined plaintiff both physically and by x-ray as a result of back complaints, and concluded Mr. Montgomery had "considerable degenerative arthritis of the lumbar spine and * * * hip joints * * * [and] the arthritis findings were stressed to [plaintiff] at that time." Medication was prescribed, and Dr. Turner next saw plaintiff in consultation with Dr. McAlhany after Mr. Montgomery had been hospitalized. Dr. Turner's testimony was that plaintiff had "deferred [professional] attention to his back because * * * he had a visit with me scheduled and [the reason plaintiff did not discuss the accident at that time was] that he accepted the evidence of the presence of considerable arthritis as an explanation for his trouble and he had no further thought about anything else till his pain continued * * * and then a more definitive examination [by Dr. McAlhany] revealed

what had been present all along * * * I have questioned Mr. Montgomery closely as to why he didn't tell me sooner [about the accident] and his answer to me was I was so specific with him about the X-ray finding of arthritis that he thought that [the accident] was not connected."

Office records of a Dr. Bohrer revealed this physician had treated and prescribed for plaintiff on April 14, 16, 22 and 25, 1966, for low back and leg complaints. However, the pain increased and "I had gotten so much pain that I just couldn't stand it any longer. I took seventeen of them pain tablets that day and Norris [plaintiff's son] came by and he called McAlhany." Plaintiff was admitted to a Springfield hospital on April 27, 1966, under the care of Howard J. McAlhany, M. D., with a preliminary diagnosis of "extruded lumbar disc L4, rt." The recorded hospital history revealed that plaintiff "has complained of recurrent pain in the low back and legs over the last number of years and two months ago, he jumped from a small ledge, landing on his feet." Conservative treatment was administered until May 6, 1966, at which time a lumbar myelogram revealed "Disc herniation at L4-5 on the right." On the same day (May 6, 1966), plaintiff's wife wrote defendant "to notify the company of the disability of Mr. Hershel Montgomery * * * if we need to fill out a claim form, please mail * * *." This was received by defendant on May 9, 1966. A "subtotal hemilaminectomy, L4 and L5, right" was performed May 7, 1966, and plaintiff remained in the hospital until discharged on May 18, 1966.

Plaintiff's preliminary statement, previously mentioned was dated May 16, 1966, and was received by defendant on May 31, 1966. Among other things, this statement advised defendant that plaintiff had an accident January 17, 1966, when his "feet slipped off of rock ledge" and "back and leg pain began immediately." The statement noted plaintiff had first received medical attention, stopped working and had become totally disabled on or about January 19, 1966. A letter dated June 4,

1966, and signed by plaintiff, requested the defendant to "please send me a claim form. I was injured on Jan–17–66 and had to have a back operation." On June 6, 1966, defendant wrote plaintiff, "The Board of Directors is sorry to advise that because of Late Notification it cannot approve the payment of your claim * * * in order for an injured member to be entitled to benefits, he must notify the National Secretary in writing within thirty days from the date of the accident. * * * As your * * * notification * * * was not received * * * until May 9, 1966, you failed to comply with this provision."

Apropos defendant's declaration that plaintiff "was not immediately and continuously disabled as required by Article X, Section 5 of the Constitution," it cited one case, Martin v. Travelers Insurance Company, 310 Mo. 411, 276 S.W. 380, 41 A.L.R. 1372 (trfd from 247 S.W. 1024), and cursorily argues: "In case at bar the respondent went back to the lake on several occasions, drove a car, went to a doctor in Springfield, again driving a car, and generally was ambulatory and able to do his work until he entered Burge Hospital on April 27, 1966." In Martin the policy provided for disability payments if the accidental injuries "shall wholly and continuously disable the insured from date of accident from performing any and every kind of duty pertaining to his occupation." The provision in defendant's Constitution differs from the policy in the Martin case in that the words "from date of accident" do not appear in defendant's Constitution. Instead, defendant's Constitution provides for payments if the injuries shall "immediately and continuously and wholly"

disable the member. It was held in Martin the words "from date of accident" mean that disability must begin within the day of or no more than 24 hours after the accident occurred.

The record here reveals that for three months prior to the January 17, 1966, accident plaintiff was "working actively each day on this job" of building lakeside cottages. He described his daily activities as "helping the carpenters and keeping the material there and overseeing the job * * carrying material from place to place * * * I did some painting and some little lighter work" and, in traversing the hillside, negotiated "rough and rocky" ground. Plaintiff testified, "I didn't do any more work after that [accident] at all." While it is true that subsequent to the accident Mr. Montgomery drove to the lake on two or three occasions, wrote checks to pay the carpenters, drove to Springfield to see Dr. Turner, and remained ambulatory "in considerable distress" and "with a lot of discomfort" until he entered the hospital, there is no suggestion plaintiff labored at any time after the accident in any fashion substantially like or similar to what he had done before.

It is not necessary that an insured be rendered absolutely helpless, confined to his bed, incapacitated from sitting or walking, or unable to ride in or drive a motor vehicle before he may be considered to be wholly disabled. Rather, the "wholly disable" provision in accident policies contemplates inability to do all the substantial and material acts necessary to perform the insured's occupation in the usual way.[1] Likewise, it is not necessary

1. Asel v. Order of United Commercial Travelers of America, Mo.App., 193 S.W. 2d 74, 81(8), affirmed in 355 Mo. 658, 197 S.W.2d 639; Tenkhoff v. New York Life Ins. Co., Mo.App., 191 S.W.2d 1005, 1010–1012(2, 3); Volz v. Travelers Ins. Co., Mo.App., 161 S.W.2d 985, 993(1 & 3); Comfort v. Travelers Ins. Co., Mo. App., 131 S.W.2d 734, 740(1); Heald v. Aetna Life Ins. Co. of Hartford, Conn., 340 Mo. 1143, 1150, 104 S.W.2d 379, 383 (5 & 7), trfd from 90 S.W.2d 797; Parks v. Maryland Casualty Co., 230 Mo.App. 383, 395–398, 91 S.W.2d 1186, 1193–1195 (5, 8 & 10); Paetz v. London Guarantee & Accident Co., Limited, of London, England, 228 Mo.App. 564, 569–570, 71 S.W. 2d 826, 829–830; Bellows v. Travelers' Ins. Co. of Hartford, Conn., Mo. (banc), 203 S.W. 978, 982–984(2–3); Crotty v. Continental Casualty Co., 163 Mo.App. 628, 641, 146 S.W. 833, 837; James v. United States Casualty Co., 113 Mo.App. 622, 628–629, 88 S.W. 125, 127(2).

that the disability follow the infliction of the injury instantaneously for it to have "immediately" disabled the insured.[2] The effect of plaintiff's evidence was that Mr. Montgomery did no work "at all" after the accident because of his injury and, although he was not absolutely helpless nor confined to his bed, his ambulations, both afoot and by auto, were accomplished in spite of considerable distress and discomfort. Under such circumstances there was a substantial basis from which the jury could find that the accidental injury suffered by plaintiff rendered him unable to pursue all of the substantial and material acts associated with his occupation and that the injury immediately, continuously and wholly disabled him from the very time of the accident. State ex rel. Mutual Ben. Health & Accident Ass'n v. Hughes, 351 Mo. 1081, 1086–1087, 174 S.W.2d 859, 860–861(1); Zips v. Mutual Ben. Health & Accident Ass'n, Mo.App., 169 S.W.2d 62, 67–68(3). We also observe defendant's denial of liability to plaintiff, per its letter dated June 6, 1966, referred only to plaintiff's failure to comply with the provision which required written notice within thirty days of the date of the accident. This may have constituted a waiver on defendant's part to deny that the accidental injuries immediately, continuously and wholly disabled the plaintiff. See cases collected in West's Missouri Digest, Vol. 16, Part 2, Insurance, ⊜559(2). However, as this subject has not been broached by the parties we need not consider it now.

■■ Turning now to defendant's last point, it should be recognized that the thirty day written notice requirement is not absolute, and that a member who fails to comply with such provision may still be entitled to benefits if "it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible." In

dealing with liability policies and contract provisions requiring the insured to give the insurer immediate written notice of the accident, it is held that under the reasonable rule of construction of such policies the insured is not required to give the company notice of the accident until such time as the facts of the injury and its progress begin to suggest to a person of reasonable care and prudence that a possible liability of the insured to answer in damages lurks in them. St. Paul & Kansas City S. L. R. Co. v. U. S. Fidelity & G. Co., 231 Mo.App. 613, 629, 105 S.W.2d 14, 24(14); National Paper Box Co. v. Aetna Life Ins. Co., 170 Mo.App. 361, 367–368, 156 S.W. 740, 742(2). This principle has been transplanted to and specifically applied in cases involving life, health and accident insurance policies [Hayes v. Equitable Life Assur. Soc., 235 Mo.App. 1261, 1271, 150 S.W.2d 1113, 1117 (2)] so that "Notice is sufficient if given as soon as reasonably possible after discovering, in the exercise of reasonable diligence, that an injury has given, or probably will give, rise to a claim, even though such discovery was not made in time to permit notice * * * within the period specified following the injury which directly resulted in the condition upon which a claim is based." Propst v. Capital Mut. Ass'n, 233 Mo.App. 612, 630, 124 S.W.2d 515, 521. Also see: Benefit Association of Railway Employees v. France, 228 Ark. 765, 310 S.W.2d 225, 228–230; McCleneghan v. London Guarantee & Accident Co., 132 Neb. 131, 271 N.W. 276, 281(6); Beeler v. Continental Casualty Co., 121 Kan. 642, 249 P. 579, 125 Kan. 441, 265 P. 57, 58; Hawthorne v. Travelers' Protective Ass'n of America, 112 Kan. 356, 210 P. 1086, 1087–1088(2, 3), 29 A.L.R. 494; United States Casualty Co. v. Hanson, 20 Colo. App. 393, 79 P. 176, 178(4); 3 Appleman's Insurance Law and Practice, § 1418, pp. 74–78. Defendant cites us to Schoen v. American Nat. Ins. Co., Mo.App., 167 S.W.2d 423, with special emphasis on the

2. Mullins v. Masonic Protective Ass'n, 181 Mo.App. 394, 397, 168 S.W. 843, 844; 29A Am.Jur., Insurance, § 1526, p. 633;

1A Appleman's Insurance Law and Practice, § 631, pp. 501–512.

dissenting opinion without, apparently, being aware the majority opinion was affirmed in 352 Mo. 935, 180 S.W.2d 57. These opinions, in part, pronounce the ruling that a notice requirement may be excused where the evidence reveals the insured was incapable of giving it by reason of mental incapacity. We do not see that this is either applicable or helpful to the defendant.

Plaintiff told the jury he thought the accident "had just flared up my arthritis more." His assumption was confirmed by Dr. Turner after a physical and x-ray examination was made. Dr. Bohrer treated him for "sciatic neuritis," and it was not until plaintiff had submitted himself to the care of Dr. McAlhany (according to Mr. Montgomery's testimony) that he became possessed of any knowledge the accident had produced a "ruptured disc." The jury was at liberty to believe this evidence [Parks v. Midland Ford Tractor Company, Mo.App., 416 S.W.2d 22, 26(2)], and, in view of all circumstances, to find plaintiff's professed ignorance of the true facts to have been reasonable. Of course, if plaintiff was unaware of the injury the accident had caused, it would not have been "reasonably possible" for him to notify the company concerning it until such time as he became informed thereof. A preliminary diagnosis of an extruded disc was made about April 27, 1966, and was not confirmed until a myelography and an operation were performed on May 6 and 7, 1966, respectively. Defendant received notice on May 9, 1966. The fact triers could find "the notice was given as soon as was reasonably possible" after plaintiff discovered the accident had effected an injury which would entitle him to indemnity under his contract with the defendant. Under the facts in this case viewed in the light of the authorities above cited, we cannot determine the existence of any error in the cause upon the points presented on appeal. The judgment of the circuit court is, therefore, affirmed.

HOGAN, P. J., and STONE, J., concur.